# EXHIBIT A

## MUTUAL RELEASE AGREEMENT

This **MUTUAL RELEASE AGREEMENT** (the "Release") is entered into as of April 29, 2016, by and among: (a) Integradora de Servicios Petroleros Oro Negro, S.A.P.I. de C.V. ("Integradora") and its direct and indirect subsidiaries (each a "Parent Group Company" and, collectively, the "Company"), (b) the undersigned direct or indirect shareholders of Integradora (each a "Shareholder" and, collectively, the "Shareholders"), and (c) the undersigned holder of (i) the Company's senior secured bonds due 2019 (the "Existing 2019 Bonds") and/or (ii) the Company's senior secured bonds due 2015 (the "Existing 2015 Bonds" and such holder of Existing 2019 Bonds or Existing 2015 Bonds, as applicable, the "Bondholder"). Each of the Parent Group Companies, each Shareholder and the Bondholder are referred to herein as a "Party" and, collectively, as the "Parties." The Bondholder, together with each of the Bondholder's predecessors, successors and assigns, and the current and former shareholders, affiliates, direct and indirect parents, subsidiaries, managed accounts or funds, investment managers, advisees, principals, employees, agents, officers, directors, trustees, partners, members, master servicers, special servicers, trusts, professionals, attorneys, financial advisors, fund advisors, and other representatives of each of them, are collectively referred to herein as the "Bondholder Parties." Capitalized terms used but not defined herein have the meanings ascribed to them in the New Bond Agreement (as defined below).

## RECITALS

**WHEREAS**, the Company, certain holders of the Existing 2019 Bonds (collectively, the "2019 Bondholders") and certain holders of the Existing 2015 Bonds (collectively, the "2015 Bondholders," and, together with the 2019 Bondholders, the "Existing Bondholders") negotiated the terms of a restructuring of the Existing 2019 Bonds and the Existing 2015 Bonds (the "Restructuring");

**WHEREAS**, the Restructuring is to be effected after the approval of that certain amended and restated Bond Agreement, to be entered into by and between Oro Negro Drilling Pte. Ltd., as issuer, and Nordic Trustee ASA, as bond trustee, on behalf of the bondholders in the 7.50% Oro Negro Drilling Pte. Ltd. Senior Secured Bond Issue 2014/2019 (the "New Bond Agreement"), in the form attached as Exhibit B to the Irrevocable Undertaking of the Existing 2015 Bonds issuer, dated April 18, 2016; and

**WHEREAS**, the terms of the Restructuring contemplate that the Company, the Shareholders, and the Existing Bondholders would agree to mutual releases of all claims and causes of action, all as more fully set forth in the New Bond Agreement.

## AGREEMENT

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

**Section 1.**         **Releases.**

(a)         Releases by the Bondholder. The Bondholder hereby agrees that, effective as of the

Amendment Date, each Issuer Released Party shall be deemed released and discharged by each of the Bondholder Parties, to the fullest extent permitted under applicable law, from any and all causes of action and any other claims, debts, obligations, rights, suits, damages, actions, derivative claims, remedies, and liabilities whatsoever existing as of the Amendment Date (collectively, the "Bondholder Released Claims"), whether known or unknown, foreseen or unforeseen, in law, at equity, or otherwise, whether for tort, contract, including without limitation claims arising out of violations of federal or state securities laws, fraud, misrepresentation (whether intended or negligent), breach of duty (including the duty of candor), any laws or statutes similar to the foregoing, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to the Amendment Date arising from or related in any way to any Parent Group Company, the Existing 2015 Bonds, the Existing 2019 Bonds, the purchase, sale, marketing of, or rescission of the purchase or sale of any security of a Parent Group Company, the subject matter of, or the transactions or events giving rise to, any claim or equity interest that is treated under the Existing 2015 Bonds or the Existing 2019 Bonds, any business or contractual arrangements between any Parent Group Company and any Bondholder Released Party, and the negotiation, formulation, or preparation of the New Bond Agreement or related agreements, instruments, or other documents delivered in connection with the New Bond Agreement, including those that any holder of a claim against or interest in any Bondholder Released Party or any other entity could have been legally entitled to assert derivatively or on behalf of any other entity; provided, that nothing in this Release shall release or discharge any claims of the Bondholder Parties against the Issuer Released Parties accruing from and after the Amendment Date or existing under the New Bond Agreement or any of the Finance Documents immediately following the effectiveness of the New Bond Agreement, including as may arise from any binding agreements entered into among the Issuer Released Parties and the Bondholder Released Parties, including, without limitation, the New Bond Agreement and all other final documentation contemplated thereunder. Nothing in this Section 1(a) shall release any Parent Group Company from the debt obligations constituted by the Bonds or any other obligations, representations, warranties, covenants or other provisions arising under any other Finance Document, as applicable.

(b)    Releases by the Company and the Shareholders.  Each Parent Group Company and each Shareholder hereby agrees that, effective as of the Amendment Date, each of the Bondholder Parties shall be deemed released and discharged by each Issuer Released Party to the fullest extent permitted under applicable law, from any and all causes of action and any other claims, debts, obligations, rights, suits, damages, actions, derivative claims, remedies, and liabilities whatsoever existing as of the Amendment Date (collectively, the "Issuer Released Claims"), whether known or unknown, foreseen or unforeseen, in law, at equity, or otherwise, whether for tort, contract, including without limitation claims arising out of violations of federal or state securities laws, fraud, misrepresentation (whether intended or negligent), breach of duty (including the duty of candor), any laws or statutes similar to the foregoing, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to the Amendment Date arising from or related in any way to any Parent Group Company, the Existing 2015 Bonds, the Existing 2019 Bonds, the purchase, sale, marketing of, or rescission of the purchase or sale of any security of a Parent Group Company, the subject matter of, or the transactions or events giving rise to, any claim or equity interest that is treated under the Existing 2015 Bonds or the Existing 2019 Bonds, any business or contractual arrangements between any Parent Group Company and any Bondholder Released Party, and the negotiation, formulation, or preparation of the New Bond Agreement or related agreements, instruments, or other documents

delivered in connection with the New Bond Agreement, including those that any holder of a claim against or interest in any Issuer Released Party or any other entity could have been legally entitled to assert derivatively or on behalf of any other entity; provided, that nothing in this Release shall release or discharge any claims of the Issuer Released Parties against the Bondholder Released Parties accruing from and after the Amendment Date or existing under the New Bond Agreement or any of the Finance Documents as of the effectiveness of the Amendment, including as may arise from any binding agreements entered into among the Issuer Released Parties and the Bondholder Released Parties, including, without limitation, the New Bond Agreement and all other final documentation contemplated hereunder.

(c)     No Reliance and No Duty to Disclose.  Each of the Parties agrees and acknowledges that, as of the Amendment Date, (i) except as expressly provided in this Release, no other Party has warranted or otherwise made any representations to it or any of its affiliates concerning any Bondholder Released Claims or Issuer Released Claims (including, without limitation, any representation concerning the existence, nonexistence, validity, or invalidity of any Bondholder Released Claims or Issuer Released Claims, as applicable), (ii) the validity and effectiveness of the foregoing releases in this Section 1 do not depend in any way on any such representations or warranties or the accuracy, completeness, or validity thereof, (iii) no other Party has any duty to disclose or provide any facts or documents (whether material or immaterial, known or unknown, suspected or unsuspected) to it or any other Party, including, without limitation, any facts or documents that, if known, might have caused any Party not to execute and deliver this Release and/or any documents in connection with the Restructuring, except as may be required by law, and (iv) each such release shall remain in full force and effect even if any facts or documents (whether material or immaterial, known or unknown, suspected or unsuspected) were not disclosed or provided (whether intentionally, unintentionally, or otherwise) by any Party to any Party, which facts or documents, if known, might have caused any Party not to execute and deliver this Release. Notwithstanding anything to the contrary contained herein, each Party agrees that if any release contained in this Section 1 shall be unenforceable against any Party, and such Party (a "Party Plaintiff") institutes or files any Bondholder Released Claims or Issuer Released Claims against any Party (a "Party Defendant"), then the releases contained in this Section 1 shall not be effective in preventing any such Party Defendant from raising any defenses, objections, set-offs, recoupments, or counter-claims to such Bondholder Released Claims or Issuer Released Claims, as applicable, against such Party Plaintiff, in each case solely to the extent to offset any such Bondholder Released Claims or Issuer Released Claims, as applicable.

(d)     Conditions to Release Effective Date.  This Release and the Parties' respective obligations hereunder shall not become effective until (i) each of the Parties shall have exchanged a fully executed copy of this Release, (ii) each member of the 2015 Ad Hoc Bondholder Committee, each member of the Ad Hoc Bondholder Committee and each Shareholder (through its respective counsel) shall have executed and delivered a release in the form of this Release to counsel to the Company and (iii) the Restructuring shall have been consummated in accordance with the terms of the New Bond Agreement.

(e)     Waiver of Civil Code Section 1542.  With respect to the releases set forth above, the Parties expressly and voluntarily waive any and all rights and benefits conferred upon them by the provisions of Section 1542 of the California Civil Code or any similar statute, regulation or rule arising under the law of any jurisdiction.  Section 1542 states:

"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

The Bondholder, on the one hand, and the other Parties, on the other hand, acknowledge that they are aware that they or their attorneys may hereafter discover claims or facts in addition to or different from those which they now know or believe to exist with respect to either the subject matter of this Release or any Party, but they hereto further acknowledge that it is their intention to hereby fully, finally, and forever settle and release all claims among them to the extent provided in this Release, whether known or unknown, suspected or unsuspected, which now exist, may exist, or heretofore have existed.

**Section 2.**                    **Miscellaneous.**

(a)    Nothing in this Release shall constitute an obligation or contractual relationship as between the Bondholder and any other Existing Bondholder.

(b)    <u>Amendments; Waivers</u>.  This Release may not be amended or modified, and no provision hereof may be waived, without the prior written consent of each Party that has executed this Release and each party that has executed a release in the form of this Release.  No waiver of any of the provisions of this Release shall be deemed or shall constitute a waiver of any other provision hereof or thereof (whether or not similar), nor shall such waiver constitute a continuing waiver unless otherwise expressly provided in writing.

(c)    <u>Successors and Assigns</u>.  This Release shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns.

(d)    <u>Counterparts</u>.  This Release may be executed in any number of counterparts and by different Parties and separate counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute one and the same instrument.  Executed signature pages may be detached from multiple separate counterparts and attached to a single counterpart so that all signature pages are physically attached to the same document.  Any Party may execute and deliver a counterpart of this Release by delivery by facsimile or electronic mail transmission of a signature page of this Release signed by such Party, and any such facsimile or electronic mail signature shall be treated in all respects as having the same effect as having an original signature.

(e)    <u>Headings</u>.  The titles, captions, or headings in this Release are included herein for convenience of reference only and shall not constitute a part of this Release for any purpose.

(f)    <u>Entire Agreement</u>.  This Release contains the entire understanding of the Parties with respect to the releases set forth herein.  In the event of any conflict between the provisions of this Release and the New Bond Agreement, the provisions of this Release shall control.

(g)    <u>Parties' Use of Legal Counsel and Construction of Agreement</u>.  Each of the Parties hereby acknowledges that it has been advised by its own legal counsel in connection with the negotiation, drafting, execution, delivery, and consummation of this Release (including, without limitation, the release provisions hereof). The Parties agree and acknowledge that the normal rule

of construction, to the effect that any ambiguities are to be resolved against the drafting Party, shall not be employed in the interpretation of this Release or any amendments, exhibits, or schedules hereto. Each Party has entered into this Release freely and voluntarily, without coercion, duress, distress, or influence by any other Persons or its respective shareholders, directors, officers, partners, agents, or employees.

(h)    <u>Severability</u>.  Whenever possible, each provision of this Release shall be interpreted in such a manner so as to be effective and valid under applicable law, but if any provision of this Release shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Release.

(i)    <u>GOVERNING LAW; JURISDICTION; WAIVER OF JURY TRIAL</u>.

i.    This Release shall be construed and enforced in accordance with, and the rights of the Parties shall be governed by, the laws of the State of New York, U.S.A., without giving effect to the conflict of laws principles thereof.

ii.    Each of the Parties irrevocably agrees that any legal action, suit, or proceeding arising out of or relating to this Release brought by any Party or its successors or assigns shall be brought and determined in any federal or state court in the Borough of Manhattan, the City of New York, the State of New York, U.S.A., and each of the Parties hereby irrevocably submits to the exclusive jurisdiction of the aforesaid courts for itself and with respect to its property, generally and unconditionally, with regard to any such proceeding arising out of or relating to this Release.  Each of the Parties agrees not to commence any proceeding relating hereto except in the courts described above in New York, other than proceedings in any court of competent jurisdiction to enforce any judgment, decree, or award rendered by any such court in New York as described herein. Each of the Parties hereby irrevocably and unconditionally waives, and agrees not to assert, by way of motion or as a defense, counterclaim or otherwise, in any proceeding arising out of or relating to this Release or the Restructuring, (A) any claim that it is not personally subject to the jurisdiction of the courts in New York as described herein for any reason, (B) that it or its property is exempt or immune from jurisdiction of any such court or from any legal process commenced in such courts (whether through service of notice, attachment prior to judgment, attachment in aid of execution of judgment, execution of judgment, or otherwise) and (C) that (1) the proceeding in any such court is brought in an inconvenient forum, (2) the venue of such proceeding is improper, or (3) this Release, or the subject matter hereof, may not be enforced in or by such courts.

iii.    EACH PARTY HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS RELEASE OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT, OR ANY OTHER THEORY). EACH PARTY (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT, OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION,    SEEK    TO    ENFORCE    THE    FOREGOING    WAIVER    AND

(B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HAVE BEEN INDUCED TO ENTER INTO THIS RELEASE BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS CLAUSE (iii).

**IN WITNESS WHEREOF**, this Release is entered into as of the date first written above.

**INTEGRADORA DE SERVICIOS PETROLEROS
ORO NEGRO, S.A.P.I. DE C.V.
for itself and each Parent Group Company**

_____

Name:
Title:

**PERFORADORA ORO NEGRO, S. DE R.L. DE
C.V.**

_____

Name:
Title:

**ORO NEGRO OFFSHORE DRILLING PTE. LTD.**

_____

Name:
Title:

**ORO NEGRO DRILLING PTE. LTD.**

_____

Name:
Title:

_Signature Page - Mutual Release_



ORO NEGRO IMPETUS PTE. LTD.

Name:
Title:

ORO NEGRO DECUS PTE. LTD.

Name:
Title:

ORO NEGRO FORTIUS PTE. LTD.

Name:
Title:

ORO NEGRO LAURUS PTE. LTD.

Name:
Title:

ORO NEGRO PRIMUS PTE. LTD.

Name:
Title:

*Signature Page - Mutual Release*

**ARCM DISTRESSED ENERGY OPPORTUNITIES
MASTER FUND LTD.**

_____

Name:  Bill Wong
Title:  Authorised Representative


Asia Research and Capital Management Ltd., as
investment advisor

_[Signature page to Mutual Release]_

GONZALO GIL WHITE

[*Signature page to Mutual Release*]

**GARY OLSON**

_____

By: _____

**CINAINVEST HOLDING S.A.**

By: _____

Yannick Fasana
Administrateur

Position: Attorney-in-fact

*[Signature page to Mutual Release]*

**BANCO NACIONAL DE MÉXICO, S.A.,
INTEGRANTE DEL GRUPO FINANCIERO
BANAMEX, DIVISIÓN FIDUCIARIA, COMO
FIDUCIARIO DEL FIDEICOMISO F/169852**

Name:
Title:

*[Signature page to Mutual Release]*

**AXIS OIL FIELD HOLDING, S. DE R.L. DE C.V.**

_____

Name:
Title:

[*Signature page to Mutual Release*]

AXIS OIL FIELD SERVICES, S. DE R.L. C.V.

Name:
Title:

*[Signature page to Mutual Release]*

**ACOF III ORO COÖPERATIEF U.A.**

By: _KEVIN  RYAN_

Position: Attorney-in-fact

[*Signature page to Mutual Release*]

SOMMERVILLE INVESTMENTS B.V.

Name:       P. Oosthoek
Title:       Managing Director

*[Signature page to Mutual Release]*

**GERALD L. PARSKY (ROTH IRA)**

By: _____

Position: Attorney-in-fact

**PROGENY PLUS, LLC**


By: Frederick J. Warren

Position: Manager/ Attorney-in-fact

*[Signature page to Mutual Release]*

**BRENTWOOD ASSOC. PRIVATE EQUITY PROFIT SHARING PLAN DE FECHA 1 DE
AGOSTO DE 1996 F/B/O FREDERICK J. WARREN**

By: Frederick J. Warren

Position: Manager/ Attorney-in-fact

[*Signature page to Mutual Release*]

**FREDERICK J. WARREN ROTH IRA**

By: Frederick J. Warren

Position: Manager/ Attorney-in-fact

*[Signature page to Mutual Release]*

**PROGENY PLUS, LLC**


By: Frederick J. Warren

Position: Manager/ Attorney-in-fact

*[Signature page to Mutual Release]*

**BRENTWOOD ASSOC. PRIVATE EQUITY PROFIT SHARING PLAN DE FECHA 1 DE AGOSTO DE 1996 F/B/O FREDERICK J. WARREN**

By: Frederick J. Warren

Position: Manager/ Attorney-in-fact

*[Signature page to Mutual Release]*

**FREDERICK J. WARREN ROTH IRA**

By: Frederick J. Warren

Position: Manager/ Attorney-in-fact

*[Signature page to Mutual Release]*