**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 15 |
| | ) | |
| PERFORADORA ORO NEGRO, S. DE R.L. DE | ) | Case No. 18-11094 (SCC) |
| C.V., *et al.*, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| | ) | |
| FERNANDO PEREZ-CORREA IN HIS | ) | Adv. Pro. No. 19-01360 (SCC) |
| CAPACITY AS FOREIGN REPRESENTATIVE | ) | |
| OF PERFORADORA ORO NEGRO, S. DE R.L. | ) | |
| DE C.V., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ASIA RESEARCH AND CAPITAL | ) | |
| MANAGEMENT LTD., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## THE SINGAPORE RIG OWNERS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036-6797
Tel: (212) 698-3500
Fax: (212) 698-3599

*Attorneys for Defendants Oro Negro Primus PTE. Ltd.; Oro Negro*
*Laurus PTE. Ltd.; Oro Negro Fortius PTE. Ltd.; Oro Negro Decus*
*PTE. Ltd.; and Oro Negro Impetus PTE. Ltd.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................ 1

ARGUMENT .................................................................................................................. 4

I.    THE LEGAL STANDARDS ON THIS MOTION ............................................. 4

    A.    The Standards On A Motion To Dismiss For Failure To State A Claim .............. 4

    B.    The Standards Governing The Interpretation Of The Release ............................. 6

II.    PLAINTIFFS CANNOT STATE ANY CLAIM AGAINST THE SINGAPORE
    RIG OWNERS FOR BREACH OF THE RELEASE ........................................ 6

    A.    The Singapore Rig Owners Are Not "Bondholder Parties" .................................. 7

    B.    The Release Does Not Release Any Claims Between "Issuer Released
    Parties," Such As Between Plaintiffs And The Singapore Rig Owners ............. 11

    C.    The Release Could Not Release Criminal Claims Even If It Had Purported
    To Do So .............................................................................................................. 14

III.    THE INDIVIDUAL PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR
    LACK OF SUBJECT MATTER JURISDICTION ........................................ 15

    A.    The Court Lacks Subject Matter Jurisdiction Over The Individual
    Plaintiffs' Claims ............................................................................................... 15

    B.    Even Assuming That Supplemental Jurisdiction Is Available, The Court
    Should Decline To Exercise It Over The Individual Plaintiffs' Claims ............. 17

        1.    The Individual Plaintiffs' Claims Substantially Predominate Over
        The Foreign Representative's Claims ..................................................... 19

        2.    The Court May Not Enter A Final Judgment ......................................... 21

        3.    The Court Should Not Exercise Supplemental Jurisdiction Based
        On "Related To" Jurisdiction In A Chapter 15 Case .............................. 22

CONCLUSION .............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................4, 5, 9

*Au New Haven, LLC v. YKK Corp.*,
No. 1:15-cv-3411-GHW, 2019 WL 2996473 (S.D.N.Y. July 8, 2019)..................................14

*Baker v. Simpson*,
613 F.3d 346 (2d Cir. 2010)...............................................................................16, 21

*Benoit v. Commercial Capital Corp.*,
No. 03 Civ. 5328(PKL), 2008 WL 3911007 (S.D.N.Y. Aug. 25, 2008)..................................9

*BGC Partners, Inc. v. Avison Young (Canada), Inc.*,
919 F. Supp. 2d 310 (S.D.N.Y. 2013)...............................................................................21

*Broder v. Cablevision Sys. Corp.*,
418 F.3d 187 (2d Cir. 2005)...............................................................................14

*Calka v. Chuu*,
No. 02 Civ.9769 JSR, 2003 WL 1344878 (S.D.N.Y. Mar. 19, 2003)....................................17

*Chenensky v. New York Life Ins. Co.*,
942 F. Supp. 2d 388 (S.D.N.Y. 2013)...............................................................................19

*City of New Rochelle v. Town of Mamaroneck*,
111 F. Supp. 2d 353 (S.D.N.Y. 2000)...............................................................................19

*DeJesus v. Sears, Roebuck Co.*,
87 F.3d 65 (2d Cir. 1996)...............................................................................4

*Eagle Lion Films v. Loew's Inc.*,
219 F.2d 196 (2d Cir. 1955)...............................................................................13

*Elbit Sys. Ltd. v. Credit Suisse Grp.*,
842 F. Supp. 2d 733 (S.D.N.Y. 2012)...............................................................................6

*Ellington v. EMI Music, Inc.*,
24 N.Y.3d 239 (N.Y. 2014) ...............................................................................10

*Gov't Employees Ins. Co. v. Alleyne*,
No. 17-CV-4778, 2019 WL 1382353 (E.D.N.Y. Jan. 24, 2019), *report and recommendation adopted*, 2019 WL 1547255 (E.D.N.Y. Apr. 9, 2019)..................................10

## TABLE OF CONTENTS

(continued)

**Page**

*Greenwich Capital Fin. Prod., Inc. v. Negrin*,
   74 A.D.3d 413 (App. Div. 1st Dep't 2010) ............................................................11

*Greiner v. Columbia Gas Transmission Corp.*,
   41 F. Supp. 2d 625 (S.D.W. Va. 1999)..................................................................22

*Hooks v. Auto Field Corp.*,
   No. 15 Civ. 4231, 2015 WL 8042241 (E.D.N.Y. Dec. 3, 2015) ............................20

*In re AOG Entm't, Inc.*,
   569 B.R. 563 (Bankr. S.D.N.Y. 2017)..............................................................15, 21

*In re Bernard L. Madoff Inv. Sec. LLC*,
   561 B.R. 334 (Bankr. S.D.N.Y. 2016)..............................................................19, 20

*In re Cavalry Const., Inc.*,
   496 B.R. 106 (S.D.N.Y. 2013)...............................................................................18

*In re Clinton St. Food Corp.*,
   254 B.R. 523 (Bankr. S.D.N.Y. 2000) .....................................................................6

*In re Cuyahoga Equip. Corp.*,
   980 F.2d 110 (2d Cir. 1992)....................................................................................16

*In re Dreier LLP*,
   No. 08–15051, 2012 WL 4867376 (Bankr. S.D.N.Y. Oct. 12, 2012) .....................18

*In re Healthcare Real Estate Partners, LLC*,
   ___ F.3d ____, No. 18-3267, 2019 WL 5382946 (3d Cir. Oct. 22, 2019) ............20

*In re Indicon*,
   499 B.R. 395 (D. Conn. 2013), *aff'd sub nom. In re Indicon, Inc.*, 645 F.
   App'x 39 (2d Cir. 2016)...........................................................................................18

*In re JMK Constr. Grp., Ltd.*,
   502 B.R. 396 (Bankr. S.D.N.Y. 2013) ....................................................................18

*In re Johnston*,
   No. 05–6288, 2007 WL 1166017 (Bankr. N.D.W. Va. Apr. 12, 2007)...................18

*In re Kebe*,
   444 B.R. 871 (Bankr. S.D. Ohio 2011)..............................................................21, 22

*In re Lipper Holdings, LLC*,
   1 A.D.3d 170 (App. Div. 1st Dep't 2003) ...............................................................11

# TABLE OF CONTENTS
(continued)

**Page**

*In re Masterwear Corp.*,
   241 B.R. 511 (Bankr. S.D.N.Y. 1999) ................................................................18, 21, 22, 23

*In re Metcalfe & Mansfield Alternative Investments*,
   421 B.R. 685 (Bankr. S.D.N.Y. 2010) .................................................................................16

*In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*,
   613 F. Supp. 2d 437 (S.D.N.Y. 2009) .................................................................................20

*In re Pegasus Gold Corp.*,
   394 F.3d 1189 (9th Cir. 2005) .............................................................................................23

*In re Samson Res. Corp.*,
   590 B.R. 643 (Bankr. D. Del. 2018) ....................................................................................10

*InterDigital Commc'ns Corp. v. Nokia Corp.*,
   407 F. Supp. 2d 522 (S.D.N.Y. 2005)..................................................................................11

*Lionel Corp. v. Civale & Trovato, Inc. (In re Lionel Corp.)*,
   29 F.3d 88 (2d Cir. 1994).....................................................................................................23

*Long v. O'Neill*,
   126 A.D.3d 404 (App. Div. 1st Dep't 2015) .......................................................................13

*Lyons v. Litton Loan Servicing LP*,
   158 F. Supp. 3d 211 (S.D.N.Y. 2016)..................................................................................15

*Madonna v. United States*,
   878 F.2d 62 (2d Cir. 1989).....................................................................................................5

*McConnell v. Costigan*,
   No. 00 CIV. 4598, 2000 WL 1716273 (S.D.N.Y. Nov. 16, 2000) .......................................19

*McKillen v. Wallace (In re Irish Bank Resolution Corp. Limited)*,
   No. 13-12159-CSS, 2019 WL 4740249 (D. Del. Sept. 27, 2019) .......................................24

*Papasan v. Allain*,
   478 U.S. 265 (1986)............................................................................................................4, 9

*Parmalat Capital Finance, Ltd. v. Bank of America Corp.*,
   639 F.3d 572 (2d. Cir. 2011)............................................................................................16, 23

*Poindexter v. EMI Record Grp. Inc.*,
   No. 11 Civ. 559, 2012 WL 1027639 (S.D.N.Y. Mar. 27, 2012) ...........................................5

## TABLE OF CONTENTS

(continued)

**Page**

*Prichard v. 164 Ludlow Corp*.,
    831 N.Y.S.2d 362 (Sup. Ct. 2006), *aff'd*, 49 A.D.3d 408 (App. Div. 1st Dep't
    2008) ................................................................................................................6

*Roth v. Jennings*,
    489 F.3d 499 (2d Cir. 2007) ..............................................................................5

*Scott v. AIG Prop. Cas. Co.*,
    No. 1:17-CV-1052-GHW, 2017 WL 1380607 (S.D.N.Y. Apr. 17, 2017) ...........17

*Semi-Tech Litig. LLC v. Bankers Tr. Co.*,
    234 F. Supp. 2d 297 (S.D.N.Y. 2002) ..............................................................20

*Shipping Fin. Servs. Corp. v. Drakos*,
    140 F.3d 129 (2d Cir. 1998) ..............................................................................15

*Townsquare Media, Inc. v. Brill*,
    652 F.3d 767 (7th Cir. 2011) ............................................................................22

*Trikona Advisors Limited v. Chugh*,
    846 F.3d 22 (2d Cir. 2017) ................................................................................23

*U.S.* v. *J.A. Jones Const. Grp., LLC*,
    333 B.R. 637 (E.D.N.Y. 2005) ..........................................................................24

*United Mine Workers of Am. v. Gibbs*,
    383 U.S. 715 (1966) ..........................................................................................19

*Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*,
    594 F. App'x 700 (2d Cir. 2014) ........................................................................6

*VKK Corp. v. Nat'l Football League*,
    244 F.3d 114 (2d Cir. 2001) ..........................................................................9, 10

**STATUTES**

11 U.S.C. § 1501 ......................................................................................................23

11 U.S.C. § 1509 ......................................................................................................24

28 U.S.C. § 157 ................................................................................................18, 21

28 U.S.C. § 1334 ..........................................................................................3, 15, 18

28 U.S.C. § 1367 ......................................................................................17, 18, 19, 22, 23

N.Y. Penal Law § 215.45 ........................................................................................14

# TABLE OF CONTENTS

(continued)

**Page**

OTHER AUTHORITIES

Bankruptcy Rule 7008 ...................................................................................................4

Bankruptcy Rule 7012 ...................................................................................................4

Fed. R. Civ. P. 8 ............................................................................................................4

Fed. R. Civ. P. 12 ..........................................................................................................4

Patrick M. Birney and Michael R. Enright, *May a Bankruptcy Court Exercise Supplemental Jurisdiction Predicated on its Referred "Related To" Jurisdiction?*, 19 J. BANKR. L. & PRAC. 1 ART. 1 (2010) ......................................................22

Susan Block-Lieb, *The Case Against Supplemental Bankruptcy Jurisdiction: A Constitutional, Statutory, and Policy Analysis*, 62 FORDHAM L. REV. 721 (1994) ..................................................................................................................18

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Oro Negro Primus, Oro Negro Laurus, Oro Negro Fortius, Oro Negro Decus, and Oro Negro Impetus (the "**Singapore Rig Owners**" or "**Rig Owners**")[1] respectfully submit this Memorandum of Law in Support of Their Motion to Dismiss the Complaint filed by the Foreign Representative ("**Foreign Representative**") for Perforadora Oro Negro, S. de R.L. de C.V. ("**Perforadora**," together with Integradora de Servicios Petroleros Oro Negro, S.A.P.I. de C.V. ("**Integradora**"), "**Oro Negro**" or the "**Foreign Debtors**")) and four former directors/officers of the Foreign Debtors, Messrs. Canedo-White, Williamson-Nasi, Gil-White and Villegas-Vargas (the "**Individual Plaintiffs**," and together with the Foreign Representative, "**Plaintiffs**").[2]

## INTRODUCTION

The Complaint alleges that the Singapore Rig Owners breached a release entered into in connection with a 2016 Oro Negro bond restructuring (the "**Release**") and should be held liable for damages caused by the alleged breaches.[3]  The plain language of the Release, however, is clear, unambiguous, and cannot plausibly be interpreted to release *any* claims by the Singapore Rig Owners against Plaintiffs, whether arising out of the various Mexican criminal and civil

---

[1] The Singapore Rig Owners, which are incorporated in and with a principal place of business in the Republic of Singapore, collectively own five "jack-up rigs."  *See* Compl. ¶¶ 47, 66-67.

[2] The Singapore Rig Owners assert that the claims alleged by the Plaintiffs are non-core and they do not consent to entry of a final judgment by the bankruptcy court.

[3] The Release is attached as Exhibit A to the Complaint.  The other operative document upon which Plaintiffs' claim rests (which Plaintiffs neglected to attach to their Complaint) is the Amended and Restated Bond Agreement between Oro Negro Drilling Pte. Ltd. and Nordic Trustee ASA on behalf of the Bondholders in the bond issue 7.50% Oro Negro Drilling Pte. Ltd. Senior Secured Bond Issue 2014/2019, entered into in April 2016 (the "**New Bond Agreement**"); a copy of the New Bond Agreement is attached as Exhibit 1 to the Declaration of William Clareman, filed contemporaneously with the Bondholder Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Complaint ("**Ad Hoc Mem.**").

proceedings involving the Plaintiffs, or otherwise. The Complaint, therefore, lacks any merit and should be dismissed.

*First*, the Singapore Rig Owners are not defined anywhere in the Release as parties that released the Plaintiffs. Only the "Bondholder Parties" provided releases to the Plaintiffs. Although the Singapore Rig Owners were controlled by Oro Negro at the time of the Release (and thus provided a release for the *benefit* of the Bondholders), Plaintiffs allege that the Singapore Rig Owners fall within the Release's definition of "Bondholder Parties" because they supposedly came under the "control" of the Ad Hoc Group at a later date.[4] Even crediting this factually unsupported "control" allegation solely for present purposes, it still fails to transform the Singapore Rig Owners into "Bondholder Parties" under the plain language of the Release.

The Release clearly covers ***only*** the "<u>current and former</u>" affiliates, agents, and representatives of the Bondholder as of the execution of the Release; yet Plaintiffs expressly argue that it was not until September 2017—many months after the Release became effective— that the Singapore Rig Owners purportedly became controlled by the Bondholders. Accordingly, even if the Singapore Rig Owners ***subsequently*** became "affiliates," "agents," or "representatives" of the Bondholders (which they did not), they nonetheless still would not fall within the definition of "Bondholder Parties" in the Release. Plaintiffs' revisionist interpretation of the Release also would require that the Singapore Rig Owners be both the releasors and the releases on the same released claims—a facially absurd result that the Court should reject not only under the plain language of the Release, but also under settled principles of contract

---

[4] The "Ad-Hoc Group" is defined in the Complaint to be the "controlling group" of Oro Negro's bondholders. *See* Compl. at 1 & ¶ 1.

2

interpretation.  In sum, there is no good-faith reading of the Release by which the Singapore Rig

Owners could be held to have released claims against Plaintiffs.

*Second*, Plaintiffs' claim for breach of the Release also fails because the Release could

not possibly have released claims based on Plaintiffs' criminal conduct.  An agreement to release

criminal claims, or not to report a crime or initiate a criminal prosecution, is contrary to New

York law and will not be enforced by a New York court as a matter of public policy.  Indeed, the

Release specifically states that it only releases claims "to the fullest extent permitted under

applicable law."

*Finally*, the claims of the individual Plaintiffs should also be dismissed for lack of subject

matter jurisdiction.  The Individual Plaintiffs filed the Complaint in their personal capacities, not

on behalf of the Foreign Debtors, and these non-core Claims have no conceivable effect on the

Mexican estates of the Foreign Debtors; accordingly, the jurisdictional requirements of 28 U.S.C.

§ 1334 are not met.  And, the Court should not exercise supplemental jurisdiction over the

Individual Plaintiffs' claims based on "related to" jurisdiction.[5]  Accordingly, the Individual

Plaintiffs' claims should be dismissed on this independent basis.

---

[5] Before addressing the Complaint's utter lack of merit, the Court should take stock of the
Foreign Representative's conduct herein.  In this latest lawsuit, the Foreign Representative—who
unquestionably is a fiduciary for the benefit of the creditors of the Foreign Debtors—has joined
forces, and shares counsel, with the four members of the Foreign Debtors' former management,
who, according to the Complaint itself, are the subject of Mexican arrest warrants for various
crimes committed in their management capacities to the detriment of the Foreign Debtors, the
Singapore Rig Owners, and the Foreign Debtors' largest creditors—the Bondholders.  Thus,
rather than fulfilling his fiduciary duties to the creditors, the Foreign Representative instead is
acting in concert with persons accused of defrauding those creditors to lob wide-ranging attacks
against the creditors.  Indeed, rather than seek recompense from the Individual Plaintiffs for the
damages they inflicted on the Foreign Debtors and their creditors through conduct that,
notwithstanding the self-serving denials in the Complaint, was found credible enough by
Mexican prosecutors and judges to justify the issuance of multiple arrest warrants, the Foreign
Representative chose to join the Individual Plaintiffs in suing the victims—the Bondholders and

## ARGUMENT

## I.    THE LEGAL STANDARDS ON THIS MOTION

### A.    The Standards On A Motion To Dismiss For Failure To State A Claim

A motion to dismiss under Fed. R. Civ. P. 12(b)(6), made applicable by Bankruptcy Rule 7012(b), is "designed to test the legal sufficiency of the complaint, and thus does not require the court to examine the evidence at issue." *See DeJesus v. Sears, Roebuck Co.*, 87 F.3d 65, 69 (2d Cir. 1996). While Fed. R. Civ. P. 8(a)(2), incorporated by Bankruptcy Rule 7008, provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See id*. *Iqbal* provides a two-step approach to evaluate motions to dismiss:

*First*, the court may begin by "identifying pleadings that, because they are no more than [legal] conclusions, are not entitled to the assumption of truth." *See id.* at 679. The court need not credit conclusory statements unsupported by factual allegations or legal conclusions and characterizations presented as factual allegations. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

*Second*, the court may give "well-pleaded factual allegations" an assumption of veracity and determine whether, together, "they plausibly give rise to an entitlement to relief." *See Iqbal*, 556 U.S. at 679. Plausibility requires more than the "sheer possibility" of wrongdoing—the

---

the Foreign Debtors' own former subsidiaries (the Rig Owners)—for breaching an alleged promise to keep these criminal acts secret. Such conduct is both brazen and improper.

4

plaintiff must plead sufficient factual content to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See id.* at 678. Determining whether a claim is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *See id.* at 679. If the allegations show that the complained-of conduct was "not only compatible with, but indeed was more likely explained by," lawful conduct, no claim for relief is stated. *See id.* at 680, 682 (complaint fails to state a claim when there is an "obvious alternative explanation" for the conduct alleged that is more "likely" than the inference drawn in complaint).

Here, because the Complaint relies upon both the Release and the New Bond Agreement, and because the two agreements repeatedly cross-reference and incorporate each other, both the Release and the New Bond Agreement properly may be considered on this motion to dismiss. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered."). However, on a motion to dismiss a court should not accept allegations that are contradicted or undermined by written materials properly before the court. *See Madonna v. United States*, 878 F.2d 62, 65-66 (2d Cir. 1989); *Poindexter v. EMI Record Grp. Inc.*, No. 11 Civ. 559, 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012) (When "a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true.").

**B.      The Standards Governing The Interpretation Of The Release**

The legal principles by which the Court is to determine the meaning of the Release are

also well settled.[6]  "The usual rules governing the interpretation of contracts under New York

law also apply to general releases."  *See In re Clinton St. Food Corp.*, 254 B.R. 523, 534 (Bankr.

S.D.N.Y. 2000) (citation and footnote omitted); *see also Elbit Sys. Ltd. v. Credit Suisse Grp.*, 842

F. Supp. 2d 733, 738 (S.D.N.Y. 2012) ("Whether the Release bars Elbit's fraud claims is a

question of contract interpretation.").

Where, as here, a release is clear on its face, no extrinsic evidence is necessary to

interpret its terms.  *See Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*, 594 F. App'x 700,

702 (2d Cir. 2014) ("If the court finds that the contract is not ambiguous it should assign the

plain and ordinary meaning to each term and interpret the contract without the aid of extrinsic

evidence.").  Moreover, "[w]here a written agreement unambiguously contradicts the allegations

of a breach of contract cause of action, the contract itself constitutes documentary evidence

warranting dismissal of the complaint . . . regardless of any extrinsic evidence or self-serving

allegations offered by the plaintiff."  *See Prichard v. 164 Ludlow Corp.*, 831 N.Y.S.2d 362 (Sup.

Ct. 2006), *aff'd*, 49 A.D.3d 408 (App. Div. 1st Dep't 2008).

**II.      PLAINTIFFS CANNOT STATE ANY CLAIM AGAINST THE SINGAPORE RIG
OWNERS FOR BREACH OF THE RELEASE**

Plaintiffs' Complaint against the Singapore Rig Owners rests on three central allegations:

(1) through the Release,[7] the Ad Hoc Group released all claims against Oro Negro and its

---

[6] The Release is governed by New York law.  *See* Release at § 2(i).  The New Bond Agreement
contains a Norwegian choice of law provision and an exclusive Norwegian forum selection
clause.  *See* New Bond Agreement §§ 18.7.1-18.7.2.

[7] As the Complaint acknowledges, the New Bond Agreement contains a release provision that is
substantively similar to the Release in all respects relevant to this Motion.  *See* Compl. ¶¶ 98-

directors/officers—and therefore each of the Plaintiffs—"from any and all claims, causes of action or liabilities, including any claims for fraud or mismanagement, prior to April 2016" (*see* Compl. ¶ 10); (2) the Release binds "any entities owned and/or controlled by the Ad-Hoc Group, including the Singapore Rig Owners, which the Ad-Hoc Group purports to control" (*see id.* ¶ 93); and (3) the Singapore Rig Owners breached the Release by taking certain actions in Mexico and Singapore against the Plaintiffs beginning in September 2017 (*see id.* ¶¶ 5-6, 11, 119-120, 124-126, 137).[8]  This motion addresses the second of these core allegations, without which Plaintiffs cannot state ***any*** claim for breach of the Release against the Singapore Rig Owners. Indeed, regardless of the accuracy (or inaccuracy) of Plaintiffs' allegations regarding the Singapore Rig Owners (or the Ad Hoc Group), because there is no conceivable—let alone plausible—reading of the Release whereby any Singapore Rig Owner released any claim against any Plaintiff, Plaintiffs' claim for breach of the Release against the Singapore Rig Owners necessarily fails.

### A.    The Singapore Rig Owners Are Not "Bondholder Parties"

Each of the critical terms used in the Releases is defined in the Release and/or the New Bond Agreement, as described below.  This plain language of the Release—which the Court is bound to enforce—could not be clearer.

---

100; New Bond Agreement §§ 15.6-15.7.  Plaintiffs do not assert a claim for breach of the New Bond Agreement.

[8] To be sure, the present Complaint, like the June 2019 Complaint that the Foreign Representative has filed against the Ad Hoc Group and the Singapore Rig Owners, is rife with irrelevant soliloquies and factual inaccuracies about events occurring in Mexico, Singapore, and elsewhere around the world.  *See, e.g.*, Compl. ¶¶ 4-9, 11-12, 74-75, 101-108, 118-128, 133-136, 144-149, 153-158.  However, due to the core failings of the present Complaint to state any claim for breach of the Releases against the Singapore Rig Owners, the Court need not even consider any issue raised by these fanciful allegations.

Section 1(a) of the Release, which is titled "Release by the Bondholder," sets forth that "each Issuer Released Party" shall be released "by each of the Bondholder Parties" from the claims specified therein. *See* Release at § 1(a). "Bondholder Parties" is defined to mean:

> "[t]he Bondholder, together with each of the Bondholder's predecessors, successors and assigns, and the current and former shareholders, affiliates, direct and indirect parents, subsidiaries, managed accounts or funds, investment managers, advisees, principals, employees, agents, officers, directors, trustees, partners, members, master servicers, special servicers, trusts, professionals, attorneys, financial advisors, fund advisors, and other representatives of each of them. . . ."

*See* Release at 1 (emphasis added). "Bondholder" is defined to mean the holder of either the Company's senior secured bonds due 2019 or the Company's senior secured bonds due 2015. *See id.*

Plaintiffs allege that they are "Issuer Released Parties," and they therefore received a release from the "Bondholder Parties." *See* Compl. ¶¶ 95-100. They proceed to conclusorily allege that the Singapore Rig Owners somehow fall within the Release's definition of "Bondholder Parties," and that the Singapore Rig Owners therefore released claims against each of the Plaintiffs. *See, e.g.*, *id*. ¶¶ 92, 93, 99. There is no conceivable reading of the Release by which the Singapore Rig Owners are, or ever could correctly be recognized as, "Bondholder Parties" as defined in the Release upon which Plaintiffs' lawsuit is based. Plaintiffs' wishful efforts at sweeping the Singapore Rig Owners into the definition of "Bondholder Parties" cannot withstand even the slightest scrutiny.

The Singapore Rig Owners were not, and are not alleged to be, a "Bondholder." And, although the definition of "Bondholder Parties" plainly includes a number of persons or entities beyond the Bondholders themselves (such as "affiliates," "agents" and "representatives"), the Release contains a critical limitation: ***only*** such "current and former" persons or entities are

included in the definition of "Bondholder Parties."[9]  There can be no dispute that as of the date of the Release (April 29, 2016), the Singapore Rig Owners were ***not*** the Bondholders' "***current or former***" "affiliates," "agents," "representatives"—or any other term used in the definition of "Bondholder Parties."  To the contrary, Plaintiffs specifically allege that it was not until *September 2017*—more than sixteen months *after* the Release was executed—that the Singapore Rig Owners purportedly became controlled by the Bondholders.  *See* Compl. ¶¶ 49-50, 110.  Whether as a matter of black-letter contract interpretation or plain common sense, neither "current" nor "former" means "future."[10]

The only plausible reading of the plain language of the Release is that the Singapore Rig Owners are ***not*** "Bondholder Parties" under the Release.  Accordingly, even if the Singapore Rig Owners ***subsequently*** became "affiliates," "agents" or "other representatives" of the Bondholders (which they did not), the Singapore Rig Owners nonetheless would still ***not*** be encompassed in the Release's definition of "Bondholder Parties."[11]  *See VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 130 (2d Cir. 2001) (where "[r]elease refers to 'past, present, and future . . . Releasors' but makes no mention of future 'Releasees,'" release only applied to claims by current members of football league at the time the release was executed, not future members);

---

[9] Parties purportedly under the "control" of the Bondholders at any time are not specifically included in the Release, as the term "control" nowhere appears in the definition of Bondholder Parties.  *See* Release at 1.

[10] "Use of the term 'current,' which is defined as 'presently elapsing'" and 'occurring in or belonging to the present time' … removes any ambiguity.  Courts in several jurisdictions have found the word 'current' to be unambiguous in various contexts."  *See Benoit v. Commercial Capital Corp.*, No. 03 Civ. 5328(PKL), 2008 WL 3911007 (S.D.N.Y. Aug. 25, 2008).

[11] Plaintiffs' failure to plead a factual basis to support their allegation that the Singapore Rig Owners were "controlled" by the Ad Hoc Group is even further reason to reject that allegation.  *See Iqbal*, 556 U.S. at 679; *Papasan*, 478 U.S. at 286.

*Ellington v. EMI Music, Inc*., 24 N.Y.3d 239, 246 (N.Y. 2014) ("Absent explicit language demonstrating the parties' intent to bind future affiliates of the contracting parties, the term "affiliate" includes only those affiliates in existence at the time that the contract was executed."); *Gov't Employees Ins. Co. v. Alleyne*, No. 17-CV-4778, 2019 WL 1382353, at *3 (E.D.N.Y. Jan. 24, 2019), *report and recommendation adopted*, 2019 WL 1547255 (E.D.N.Y. Apr. 9, 2019) (denying motion for default judgment on breach of contract claim because defendant "did not exist at the time of the Original Action, [and] was not a signatory to the Settlement Agreement"); *In re Samson Res. Corp.*, 590 B.R. 643, 654 (Bankr. D. Del. 2018) (holding that only parties who held shares of debtor were included in release as "current and former . . . equity holders").

    *Ellington* and *VKK* are directly on point.  In *Ellington*, the New York Court of Appeals considered an agreement binding certain music publishers "and their predecessors in interest, and any other affiliate."  *Ellington*, 24 N.Y.3d at 246.  Noting that "the parties did not include any forward looking language," the Court held that "[a]bsent such language, . . . affiliated companies . . . which existed at the time are bound by the provision, not entities that affiliated with [the publisher] after execution of the Agreement."  *Id.*  Similarly, in *VKK*, the Second Circuit considered whether a release of antitrust claims was binding on a football club that entered the National Football League after the release was executed.  The Court reasoned that "[t]he Release's reference to 'affiliates' and the definition of the word are stated in the present tense," and that "[n]othing in this definition indicates the inclusion of future rather than present members."  *VKK Corp.*, 244 F.3d at 130.  As a result, the release did not apply to future "affiliate" football clubs that entered the League after the release was executed.

    Plaintiffs' suggestion that the Singapore Rig Owners became "Bondholder Parties" when they supposedly came under the control of the Ad Hoc Group fails for another reason:  if

accepted, it would necessarily mean that the Singapore Rig Owners were both "Bondholder Parties" (by virtue of accepting Plaintiffs' allegation) *and* "Issuer Released Parties" (by virtue of their status as Integradora subsidiaries at the time of the Release, as explained *infra*), leading to the nonsensical—and unenforceable—result that the Singapore Rig Owners were *both* the releasors and the releasees of the same claims.  *See InterDigital Commc'ns Corp. v. Nokia Corp.*, 407 F. Supp. 2d 522, 530 (S.D.N.Y. 2005) ("It is hornbook law that a contract should be interpreted so as not to render its terms nonsensical."); *Greenwich Capital Fin. Prod., Inc. v. Negrin*, 74 A.D.3d 413, 415 (App. Div. 1st Dep't 2010) (rejecting contract reading that "ignores common sense, and could lead to absurd results"); *In re Lipper Holdings, LLC*, 1 A.D.3d 170, 171 (App. Div. 1st Dep't 2003) ("A contract should not be interpreted to produce a result that is absurd, commercially unreasonable or contrary to the reasonable expectations of the parties.") (citations omitted).

### B.    The Release Does *Not* Release *Any* Claims Between "Issuer Released Parties," Such As Between Plaintiffs And The Singapore Rig Owners

Were the above-demonstrated failings of Plaintiffs' claim against the Singapore Rig Owners not enough, the Release clearly states that the Singapore Rig Owners *are* included in the definition of "Issuer Released Parties" that are released by the Bondholder Parties under the terms of the Release.  Indeed, the plain language of the Release defines both Plaintiffs *and* the Singapore Rig Owners as "Issuer Released Parties."

As the Complaint correctly acknowledges, the term "Issuer Released Parties" is defined to mean:

> each of: (a) each <u>Parent Group Company</u>, (b) the direct or indirect shareholders of the Parent, (c) the predecessors, successors and assigns of each of the foregoing, and (d) <u>the current and former</u> shareholders, affiliates, direct and indirect parents, <u>Subsidiaries</u>, principals, employees, agents, officers, directors, trustees, partners,

> members, master servicers, special servicers, trusts, trustees, professionals, attorneys, and financial advisors <u>of each of the foregoing</u>, in each case in their capacity as such.

*See* New Bond Agreement at 13 (emphasis added); Compl. ¶ 95 & n.9.  "Parent Group Company" is defined to mean "the Parent or any of its Subsidiaries from time to time."  *See* New Bond Agreement at 15.  The "Parent" is defined as Integradora.  *See id.*[12]

Under the plain reading of this unambiguous definition, both all of the Plaintiffs *and* all of the Singapore Rig Owners are "Issuer Released Parties."  Each individual Plaintiff alleges that, as of the April 2016 date of the Release, he was a "current" "officer" or "director" of Integradora (*i.e.*, an "Issuer Released Party").  *See* Compl. ¶¶ 13, 30, 26, 33.  And, the Foreign Representative alleges that he has brought this action on behalf of Perforadora (*see id.* at ¶¶ 1, 37), which is also an "Issuer Released Party."

In addition, under the plain reading of the Release, each of the Singapore Rig Owners is also an "Issuer Released Party."  At the time the Release was entered into (April 2016; *see* Release at 1, Compl. ¶ 90), the Singapore Rig Owners indisputably were subsidiaries of Integradora.[13]  For this very reason, each of the Singapore Rig Owners signed the Release in its capacity as a "Parent Group Company."  In fact, the two signatories on behalf of each Singapore Rig Owner (a) include Plaintiff Gil-White (who was then the CEO of Integradora, *see* Compl. ¶ 26), and (b) are the same two signatories for Integradora.  *See* Release at 8-9.[14]  By virtue of the

---

[12] The Release contains definitions to the same effect.  Release at 1.

[13] The New Bond Agreement acknowledges this fact.  *See* New Bond Agreement at 21-22 (defining each Rig Owner as "a directly 100% (one hundred per cent) owned Subsidiary of the Issuer"); *see also* Compl. ¶¶ 62, 67 (Integradora indirectly owns the Singapore Rig Owners).

[14] The New Bond Agreement was also signed by Mr. Gil-White on behalf of the bond issuer, an Oro Negro entity known as Oro Negro Drilling PTE. Ltd.  *See* New Bond Agreement at 86.

indisputable fact that they were "Subsidiaries" of Integradora as of the April 29, 2016 execution date of the Release, the Singapore Rig Owners were "Parent Group Companies"—and therefore squarely within the definition of "Issuer Released Parties."

Sections 1(a) (*i.e.*, release of the Issuer Released Parties by the Bondholder) and 1(b) (*i.e.*, release by the Bondholder of the Issuer Released Parties) are the ***only*** release provisions in the Release.[15]  Conspicuously absent from the Release is ***any*** provision by which one Issuer Released Party releases any other Issuer Released Party.  Accordingly, under the plain language of the Release, both the Plaintiffs and the Singapore Rig Owners are "Issuer Released Parties," and there is ***no*** provision anywhere in the Release by which the Singapore Rig Owners release ***any*** claims against any of the Plaintiffs.[16]

---

[15] Section 1(b) of the Release, which is titled "<u>Release by the Company and the Shareholders</u>," provides that "each of the Bondholder Parties" shall be released "by each Issuer Released Party" from the claims specified therein.  *See* Release at § 1(b).  The "Shareholders" refers to certain Integradora shareholders who signed the Release.  *See id.* at 1.  The Singapore Rig Owners are not alleged to have been, and were not, "Shareholders."

[16] Courts applying New York law, including the Second Circuit, have held that only where the release's plain terms release claims against a party will the release be so interpreted.  For example, in *Eagle Lion Films v. Loew's Inc.*, 219 F.2d 196 (2d Cir. 1955), the plaintiff argued that certain antitrust claims were not released by the plaintiff in a prior settlement because, among other things "the alignment of parties in the release does not correspond to their alignment in this litigation."  *Id.* at 198.  In other words, the plaintiff was aligned with the defendant in the release provision at issue, and thus no claims by the plaintiff ***against*** the defendant were released.  The Second Circuit agreed, reasoning that "the release provision runs from United and Eagle Lion Classics on the one hand to Chesapeake on the other, while in this anti-trust suit Chesapeake and Eagle Lion Classics are suing United Artists."  *Id.*  The court therefore held that the "contract evidences no intent to release any one of the joint tort-feasors in this case."  *See id.  Cf. Long v. O'Neill*, 126 A.D.3d 404, 408 (App. Div. 1st Dep't 2015) (release that released claims by "each Party" against "each other Party" released all claims among plaintiff and defendants; "Had the parties wanted to release only specific individuals or entities, the agreement provided the language by which the parties could have done so.").

In sum, there is no supportable reading of the Release by which the Singapore Rig Owners could have released any claims against any of the Plaintiffs. As a result, the Complaint should be dismissed in its entirety as to the Singapore Rig Owners.[17]

### C.    The Release Could *Not* Release Criminal Claims Even If It Had Purported To Do So

The Release could not have released the claims based on criminal conduct even if it had purported to do so. The Release did not, and could not, release criminal claims. As set forth in the Ad Hoc Group's memorandum, (a) an agreement not to report a crime is illegal under Section 215.45 of the New York Penal Law, and (b) agreements that require the concealment of a crime or prohibit a party from initiating a criminal prosecution are unenforceable as a matter of New York common law. *See* Ad Hoc Mem. Part I.C. Indeed, the Release specifically states that it only releases claims "to the fullest extent permitted under applicable law." Release § 1(a). Accordingly, Plaintiffs' claims fail for this additional reason as well.[18]

---

[17] Plaintiffs also insinuate that the Singapore Rig Owners breached the implied covenant of good faith and fair dealing because they allegedly initiated or cause others to initiate Mexican criminal proceedings. *See* Compl. ¶ 177. Regardless of whether hinted at or pled, Plaintiffs cannot avoid the plain language of the Releases by invoking this implied covenant. *See Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 198-99 (2d Cir. 2005) (the implied covenant of good faith and fair dealing "does not 'add [ ] to the contract a substantive provision not included by the parties.'"); *Au New Haven, LLC v. YKK Corp.*, No. 1:15-cv-3411-GHW, 2019 WL 2996473, at *3 (S.D.N.Y. July 8, 2019) ("Plaintiffs ask the Court to permit them to use the implied covenant of good faith to create a new contractual obligation on the part of Defendants that is not found in the text of the agreement, and, as a result, stretches the implied covenant of good faith beyond its proper bounds.").

[18] The Singapore Rig Owners also join in the arguments advanced by the Ad Hoc Group for dismissal of Plaintiffs' claim for specific performance, including that (a) Plaintiffs have failed to state any claim for breach of the Release against the Singapore Rig Owners, and (b) specific performance is not a separate cause of action. Ad Hoc Mem. Part I.D.

### III.  THE INDIVIDUAL PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

In addition to the failure of the entire Complaint against the Singapore Rig Owners as just set forth, the breach of contract claims by the Individual Plaintiffs also should be dismissed for the independent reason that the Court lacks subject matter jurisdiction over these state law claims, and exercising supplemental jurisdiction is inappropriate.[19]

### A.  The Court Lacks Subject Matter Jurisdiction Over The Individual Plaintiffs' Claims

The Individual Plaintiffs filed the Complaint in their personal capacity, not on behalf of the Foreign Debtors.  *See* Compl. ¶¶ 13-36.  These non-core Claims have no conceivable effect on the Mexican estates of the Foreign Debtors.  Accordingly, the jurisdictional requirements of 28 U.S.C. § 1334 are not met.

Under Section 1334, district courts (and, by referral, bankruptcy courts) possess "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  *See* 28 U.S.C. § 1334(b).  Clearly, the Individual Plaintiffs' claims do not "arise under title 11."  *See In re AOG Entm't, Inc.*, 569 B.R. 563, 574, 576 (Bankr. S.D.N.Y. 2017) (proceedings "arise under" title 11 "when the cause of action or substantive right claimed is created by the Bankruptcy Code").  The Individual Plaintiffs sue for breach of contract based on a claimed right created by the Release, contracts of which the Individual

---

[19] "A case is properly dismissed for lack of subject matter jurisdiction under [Fed. R. Civ. P.] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *See Lyons v. Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016).  "[W]hen the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."  *See Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998).

Plaintiffs claim to be beneficiaries. Such a right, if it exists at all, manifestly is a state-law right not created by the Bankruptcy Code.

Nor do the Individual Plaintiffs' claims "arise in" a case under title 11. *See Baker v. Simpson*, 613 F.3d 346, 351 (2d Cir. 2010) (proceedings "arise in" a bankruptcy case if they "are not based on any right expressly created by [t]itle 11, but nevertheless, would have no existence outside of the bankruptcy"). The Individual Plaintiffs' claimed right is created by state law, and thus have independent existence outside of bankruptcy.

The Individual Plaintiffs' claims also are not "related to" a title 11 case. If the Individual Plaintiffs were to prevail on their claims, they would receive a *personal* recovery, which would not have any "conceivable effect" on the Foreign Debtors' Mexican estate. *Compare Parmalat Capital Finance, Ltd. v. Bank of America Corp.*, 639 F.3d 572, 579 (2d. Cir. 2011) ("a civil proceeding is 'related to' a title 11 case if the action's outcome might have any 'conceivable effect' on the bankrupt estate"); *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992) (same). Further, "courts have held that a third-party action does not create related to jurisdiction when . . . the dispute has no effect on the estate. Shared facts between the third-party action and a debtor-creditor conflict do not in and of themselves suffice to make the third-party action related to the bankruptcy." *See In re Metcalfe & Mansfield Alternative Investments*, 421 B.R. 685, 695 (Bankr. S.D.N.Y. 2010).

Here, there is little doubt that the Individual Plaintiffs' claims will not have any "conceivable effect" on the Foreign Debtors' Mexican estate. The harm asserted by the Individual Plaintiffs pertains to the "shattering" of their "reputation and livelihood." *See, e.g.*, Compl. ¶¶ 18, 24, 30, 35. The Individual Plaintiffs seek damages for their personal benefit. Even if successful, an award of damages to the Individual Plaintiffs on account of injuries to

16

their "reputation and livelihood" will have absolutely no bearing on the Foreign Debtors'

Mexican estates.  Accordingly, this Court lacks "related to" jurisdiction over the Individual

Plaintiffs' claims and must dismiss them.  *See Calka v. Chuu*, No. 02 Civ.9769 JSR, 2003 WL

1344878, at *1 (S.D.N.Y. Mar. 19, 2003) (dismissing adversary proceeding for lack of "related

to" jurisdiction because "[Plaintiff's] claim is exclusively a state law claim brought solely for her

personal benefit").

It is also clear that all claims asserted in the Complaint, both by the Foreign

Representative and the Individual Plaintiffs, are non-core as they are state law breach of pre-

petition contract claims that have independent existence outside of bankruptcy.  *See Scott v. AIG

Prop. Cas. Co.*, No. 1:17-CV-1052-GHW, 2017 WL 1380607, at *3 (S.D.N.Y. Apr. 17, 2017)

("Claims for pre-petition contract damages are generally non-core . . .  Where a contract sued

upon was formed prior to the bankruptcy petition, it will generally be highly unlikely that a

proceeding based on that contract turns on the bankruptcy laws . . . The critical question in

determining whether a contractual dispute is core by virtue of timing is not whether the cause of

action accrued post-petition, but whether the contract was formed post-petition").

### B.    Even Assuming That Supplemental Jurisdiction Is Available, The Court Should Decline To Exercise It Over The Individual Plaintiffs' Claims

To the extent that the Individual Plaintiffs may argue that this Court should exercise

supplemental jurisdiction[20] over the Individual Plaintiffs' claims based on the "related to"

---

[20] *See* 28 U.S.C. § 1367(a) ("in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution").

jurisdiction it allegedly has over the Foreign Representative's claims, that argument also must
fail.  The exercise of supplemental jurisdiction is inappropriate in the present circumstances.

While not free from doubt, generally the Second Circuit allows bankruptcy courts, where
appropriate, to exercise supplemental jurisdiction where the bankruptcy court's original
jurisdiction is over *core* claims.[21]  *See In re JMK Constr. Grp., Ltd.*, 502 B.R. 396, 403 n.6
(Bankr. S.D.N.Y. 2013) (citing *Lionel Corp. v. Civale & Trovato, Inc. (In re Lionel Corp.)*, 29
F.3d 88, 92 (2d Cir. 1994)).  This case involves solely *non-core* claims.  But even ignoring the
non-core nature of the claims, the exercise of supplemental jurisdiction is discretionary.  *See In
re Indicon*, 499 B.R. 395, 405 (D. Conn. 2013), *aff'd sub nom. In re Indicon, Inc.*, 645 F. App'x
39 (2d Cir. 2016) ("Although the Second Circuit has permitted the exercise of supplemental
jurisdiction [by the bankruptcy court] pursuant to 28 U.S.C. § 1367. . . it is within the court's

---

[21] There is a Circuit split on this question.  The Second Circuit's position is the minority view,
with most Circuits holding that bankruptcy courts cannot exercise supplemental jurisdiction.  *See
In re Cavalry Const., Inc.*, 496 B.R. 106, 114 (S.D.N.Y. 2013) (observing the same).  The
exercise of supplemental jurisdiction by bankruptcy courts has been widely critiqued by both
courts and scholars.  *See, e.g.*, *In re Masterwear Corp.*, 241 B.R. 511, 517 n.6 (Bankr. S.D.N.Y.
1999) ("The most compelling argument against supplemental jurisdiction focuses on the
language in 28 U.S.C. § 157(a). . . .  Assuming that the district court can exercise supplemental
jurisdiction when it has original bankruptcy jurisdiction, it never referred its supplemental
jurisdiction to the bankruptcy court, and section 157(a) would not authorize it anyway.  In fact,
the district court could no more refer its supplemental jurisdiction that it could refer its copyright,
criminal or diversity jurisdiction"); *In re Dreier LLP*, No. 08–15051, 2012 WL 4867376, at *5
(Bankr. S.D.N.Y. Oct. 12, 2012) ("If the Court were asked to write on a clean slate it would
conclude that it lacks supplemental jurisdiction"); *In re Johnston*, No. 05–6288, 2007 WL
1166017, at *7 (Bankr. N.D.W. Va. Apr. 12, 2007) ("[S]hould a bankruptcy court exercise
supplemental jurisdiction under § 1367, which would include all claims having some logical
relationship to the bankruptcy proceeding, then the 'related to' grant of jurisdiction in § 1334(b)
would be rendered superfluous").  *See also* Susan Block-Lieb, *The Case Against Supplemental
Bankruptcy Jurisdiction: A Constitutional, Statutory, and Policy Analysis*, 62 FORDHAM L. REV.
721 (1994).

discretion to decline to exercise that power"); *Chenensky v. New York Life Ins. Co.*, 942 F. Supp. 2d 388, 391 (S.D.N.Y. 2013).

Specifically, a court may decline to exercise supplemental jurisdiction over a claim if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*See* 28 U.S.C. § 1367(c). Here, the Court should decline to exercise supplemental jurisdiction over the Individual Plaintiffs' claims for several distinct reasons.

### 1.    The Individual Plaintiffs' Claims Substantially Predominate Over The Foreign Representative's Claims

The "district courts may decline to exercise supplemental jurisdiction over a claim . . . [if] the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." *See* 28 U.S.C. § 1367(c)(2). In other words, a "federal tail [should not] wag what is in substance a state dog." *See City of New Rochelle v. Town of Mamaroneck*, 111 F. Supp. 2d 353, 371 (S.D.N.Y. 2000). Any argument in favor of supplemental jurisdiction "is weak" where the issues over which the court does not have original jurisdiction "substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought." *See McConnell v. Costigan*, No. 00 CIV. 4598, 2000 WL 1716273, at *4 (S.D.N.Y. Nov. 16, 2000) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)).

Where such criteria are met, non-original jurisdiction claims should be dismissed without prejudice and left for resolution to the appropriate tribunals. *See Gibbs*, 383 U.S. at 726. *See also In re Bernard L. Madoff Inv. Sec. LLC*, 561 B.R. 334, 354 (Bankr. S.D.N.Y. 2016) ("I

19

decline to exercise supplemental jurisdiction because the cross-claims substantially predominate

over the issues raised by the Trustee's claims").  Further, the question of whether the non-

original jurisdiction claims predominate "must be answered by looking to the nature of the

claims as set forth in the pleading and by determining whether [such] claims are more complex

or require more judicial resources to adjudicate or are more salient in the case as a whole than the

[original jurisdiction] claims."  *See In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*,

613 F. Supp. 2d 437, 442-43 (S.D.N.Y. 2009).

Here, out of five Plaintiffs, four are Individual Plaintiffs asserting personal claims for

damages resulting from an alleged harm to their livelihood and reputation, while the Foreign

Representative alleges economic harm—loss of funds and ability to operate.  *See* Compl. ¶ 12.

Since the factual and legal questions that arise from the Individual Plaintiffs' claims for personal

damages, involve materially different claimed damages, legal issues, and require materially

different elements of proof, they "simply overwhelm" the Foreign Representative's single claim

for economic damages.  *See Semi-Tech Litig. LLC v. Bankers Tr. Co.*, 234 F. Supp. 2d 297, 301

(S.D.N.Y. 2002) (declining to exercise supplemental jurisdiction where "[t]he factual and legal

questions unique to the common law claims against the moving defendants simply overwhelm

any questions common to the TIA claims against BT"); *In re Bernard L. Madoff Inv. Sec. LLC*,

561 B.R. at 350 (finding exercise of supplemental jurisdiction over cross-claims inappropriate

because they "require different and far more extensive proof"); *Hooks v. Auto Field Corp*., No.

15 Civ. 4231, 2015 WL 8042241, at *2 (E.D.N.Y. Dec. 3, 2015) (declining to exercise

supplemental jurisdiction where plaintiff's "state law claims overshadow federal claims"); *Cf. In

re Healthcare Real Estate Partners, LLC*, ___ F.3d ____, No. 18-3267,  2019 WL 5382946, at

*5 n.4 (3d Cir. Oct. 22, 2019) (noting that determination of damages under section 303(i) "is

20

completely different than a determination" whether there was stay violation for section 363(k)

purposes).  Since the lion's share of the Complaint is premised on the Individual Plaintiffs'

claims—which "substantially predominate" over any allegations that are premised on the

Foreign Representative's capacity as plaintiff—supplemental jurisdiction is inappropriate here.

### 2.    The Court May Not Enter A Final Judgment

Another relevant consideration is the court's ability to try the case or enter a final order.

In *In re Masterwear Corp.*, 241 B.R. at 520, for example, the Court declined to exercise

supplemental jurisdiction because, *inter alia*, "the case cannot be tried in this Court, and will

have to be transferred for trial to the district court."  *See id.*  Similarly, in *In re Kebe*, 444 B.R.

871 (Bankr. S.D. Ohio 2011), the bankruptcy court held that even assuming it had authority to

exercise supplemental jurisdiction over a third-party complaint, it declined to do so because the

need to submit findings of fact and conclusions of law to the district court "would add a layer of

review that would not exist if the Third–Party Complaint were brought as a separate claim in a

state court."  *See id.* at 882-83.

In non-core "related to" matters, a bankruptcy judge cannot enter a final judgement

unless the parties consent.  *See* 28 U.S.C. § 157(c)(1).  The Foreign Representative's claims,

which also are state law claims, are not "core" since they do not "arise under title 11," *see In re

AOG Entm't, Inc.*, 569 B.R. at 574, nor do they "arise in" a case under title 11.  At most, they are

non-core.  *See supra* at 16; *Baker*, 613 F.3d at 351; *BGC Partners, Inc. v. Avison Young

(Canada), Inc.*, 919 F. Supp. 2d 310, 314 (S.D.N.Y. 2013) ("A 'non-core' civil proceeding is

'related to' a bankruptcy proceeding, and federal jurisdiction exists, if the outcome of the

litigation might have any conceivable effect on the bankruptcy estate").  As to the Individual

Plaintiffs' claims, not only are they non-core, but they are not even related, *see supra* at 16-17,

and the Singapore Rig Owners explicitly do not consent to entry of a final judgement by the Bankruptcy Court with respect to any part of the Complaint. Because this Court may not enter final judgment here, it should decline to exercise supplemental jurisdiction. *See In re Masterwear Corp.*, 241 B.R. at 520; *In re Kebe*, 444 B.R. at 882–83.

### 3. The Court Should Not Exercise Supplemental Jurisdiction Based On "Related To" Jurisdiction In A Chapter 15 Case

It is questionable whether supplemental jurisdiction is even available for cases brought for non-core matters under "related to" jurisdiction, much less whether it is appropriate to exercise supplemental jurisdiction in such a case. *See Greiner v. Columbia Gas Transmission Corp.*, 41 F. Supp. 2d 625, 627 n.4 (S.D.W. Va. 1999) ("'[A] serious question' exists as to whether Section 1367 is applicable to cases in federal court on bankruptcy 'related to' jurisdiction."). The Seventh Circuit has recognized

> the oddity that the cases that permit bankruptcy judges to exercise supplemental jurisdiction allow them to make and not just recommend the decision resolving the supplemental claim. This is inconsistent with the statutory treatment of related to jurisdiction (and why should supplemental jurisdiction be broader?) and is in tension with the Supreme Court's reluctance to allow bankruptcy judges dispositive authority over state-law claims.

*See Townsquare Media, Inc. v. Brill*, 652 F.3d 767, 772 (7th Cir. 2011); *see also* Patrick M. Birney and Michael R. Enright, *May a Bankruptcy Court Exercise Supplemental Jurisdiction Predicated on its Referred "Related To" Jurisdiction?*, 19 J. BANKR. L. & PRAC. 1 ART. 1 (2010) (explaining that "the subsumption of 'all other claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution' within 'related to' jurisdiction is simply wrong").

The Second Circuit has not ruled on whether bankruptcy courts *may* exercise supplemental jurisdiction when the underlying "original" jurisdiction involves related to jurisdiction over non-core matters.[22]  In any event, courts *should* not.  "Related to" jurisdiction cannot be used as a conduit for something larger than itself.  Such an approach—which does not adhere to the "conceivable effect" standard—would render the concept of "related to" jurisdiction superfluous.  *See Parmalat Capital Finance*, 639 F.3d at 579 ("[A] civil proceeding is 'related to' a title 11 case if the action's 'outcome might have any 'conceivable effect' on the bankrupt estate'").

Even after *In re Lionel Corp.*, 29 F.3d 88 (2d Cir. 1994), in which the Second Circuit held that bankruptcy courts may exercise supplemental jurisdiction over some claims where the court has core jurisdiction over other claims, courts in this District have stated that "the bankruptcy court's exercise of supplemental jurisdiction is not entirely clear."  *See In re Masterwear Corp.*, 241 B.R. at 517.  These concerns are all the more present in the Chapter 15 context, the purpose of which is narrowly defined to provide "assistance" in the United States to a "foreign court or a foreign representative in connection with a foreign proceeding." *See* 11 U.S.C. § 1501(b)(1); *see, e.g.*, *Trikona Advisors Limited v. Chugh*, 846 F.3d 22, 35 (2d Cir. 2017) (characterizing Chapter 15's purpose as "very narrow").

Here, the Court has, at most, "related to" jurisdiction over the portion of the Complaint brought by the Foreign Representative (*i.e.*, the portion that may have a conceivable effect on the Foreign Debtors).  Given the inherent uncertainty of bootstrapping supplemental jurisdiction to

---

[22]  *Cf. In re Pegasus Gold Corp.*, 394 F.3d 1189, 1195 (9th Cir. 2005) ("This circuit has applied § 1367 to bankruptcy claims, even when the subject matter jurisdiction is based on 'related to' bankruptcy jurisdiction").

"related to" jurisdiction, and the narrowly-tailored jurisdiction granted to this Court in Chapter 15, exercise of supplemental jurisdiction is not warranted. *Cf. McKillen v. Wallace (In re Irish Bank Resolution Corp. Limited)*, No. 13-12159-CSS,  2019 WL 4740249, at *8 (D. Del. Sept. 27, 2019) (noting that when a conduct did not occur in the U.S. but may have tangentially affected property located in the U.S., there is a potential "'misuse of Chapter 15'"  and that "'there is a real danger of bootstrapping [jurisdiction],' especially as the 'conduct alleged in no way [a]ffects the operation of Chapter 15.'").[23]

---

[23] The Singapore Rig Owners also join the Ad Hoc Group's argument that the Individual Plaintiffs lack statutory standing to bring claims in this Chapter 15 case, which is another basis to decline to exercise supplemental jurisdiction.  Chapter 15 gives the "*foreign representative*" the right to sue and be sued once the Court has granted recognition to the foreign proceeding.  11 U.S.C. §1509(b)(1) (emphasis added).  Chapter 15 does not give standing to other individuals with connections to a foreign debtor.  *See, e.g., U.S.* v. *J.A. Jones Const. Grp., LLC*, 333 B.R. 637, 638 (E.D.N.Y. 2005) ("relief under Chapter 15 is available only after a *foreign representative* commences an ancillary proceeding for recognition of a foreign proceeding").  Ad Hoc Mem. Part II.

## **CONCLUSION**

Plaintiffs have no basis for their contention that the Release released claims of the Singapore Rig Owners against them.  There is no factual support for the Complaint's claims against the Singapore Rig Owners, and they are roundly contradicted by both the Release and settled principles of contract interpretation.  Furthermore, Plaintiffs' claims, whether by the Foreign Representative or the Individual Plaintiffs, have no place in this Court.

The Singapore Rig Owners respectfully request that the Court dismiss the Complaint as against each of them in its entirety and with prejudice.

Dated: October 31, 2019
   New York, New York

Respectfully submitted,

By: */s/ Shmuel Vasser*
  Allan S. Brilliant
  Shmuel Vasser
  David A. Kotler
  Catherine Wigglesworth
  Yehuda Goor
  DECHERT LLP
  1095 Avenue of the Americas
  New York, NY  10036-6797
  allan.brilliant@dechert.com
  shmuel.vasser@dechert.com
  david.kotler@dechert.com
  catherine.wigglesworth@dechert.com
  yehuda.goor@dechert.com
  Tel:  (212) 698-3500
  Fax: (212) 698-3599

*Attorneys for Oro Negro Primus PTE. Ltd.; Oro Negro Laurus PTE. Ltd.; Oro Negro Fortius PTE Ltd.; Oro Negro Decus PTE. Ltd.; and Oro Negro Impetus PTE. Ltd.*