**Of Hearing Date and Time: To be determined.**
**Response Deadline: December 2, 2019**
**Reply Deadline: December 17, 2019**

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Tel: 212-373-3000
Fax: 212-757-3990
Andrew N. Rosenberg
Aidan Synnott
William A. Clareman

*Counsel for the Bondholder Defendants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| PERFORADORA ORO NEGO, S DE R.L. DE C.V., *et al.* | Case No. 18-11094 (SCC) (Jointly Administered) |
| Debtors in a Foreign Proceeding. | |
| FERNANDO PEREZ-CORREA IN HIS CAPACITY AS FOREIGN REPRESENTATIVE OF PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.; JOSE ANTONIO CAÑEDO-WHITE; CARLOS WILLIAMSON-NASI; GONZALO GIL-WHITE; AND MIGUEL ÁNGEL VILLEGAS-VARGAS | Adv. Pro. No. 19-01360 (SCC) |
| Plaintiffs, | |
| - against – | |
| ASIA RESEARCH AND CAPITAL MANAGEMENT LTD.; GHL INVESTMENTS (EUROPE) LTD.; ORO NEGRO PRIMUS PTE., LTD.; ORO NEGRO LAURUS PTE., LTD.; ORO NEGRO FORTIUS PTE., LTD.; ORO NEGRO DECUS PTE., LTD.; ORO NEGRO IMPETUS | |

PTE., LTD.; SHIP FINANCE INTERNATIONAL
LTD.; and DOES 1-100

                Defendants.

## BONDHOLDER DEFENDANTS'
## <u>MOTION TO DISMISS THE COMPLAINT</u>

# TABLE OF CONTENTS

**Page**

Preliminary Statement.................................................................................................. 1

Relevant Factual Background ...................................................................................... 4

    A.    The 2016 Releases ...................................................................... 5

    B.    The Singapore Rig Owners' May 3 Criminal Complaint ...................................... 8

    C.    Plaintiffs' Causes of Action ................................................................ 10

Argument ................................................................................................................... 11

I.    Plaintiffs' Breach of Contract Claims Fail to State a Claim on Which Relief
May Be Granted ................................................................................................. 11

    A.    The May 3 Criminal Complaint Does Not Assert Bondholder Released
Claims, and the Singapore Rig Owners Did Not Release Claims Against
Oro Negro's Managers or Shareholders ............................................. 12

    B.    The Bondholders Did Not Release Claims on Behalf of the Singapore Rig
Owners or Future Affiliates ................................................................. 13

    C.    The 2016 Releases Did Not Release Criminal Claims ......................................... 15

    D.    Plaintiffs Fail to State a Claim for Specific Performance..................................... 19

II.    The Individual Defendants' Claims Should Be Dismissed Because this Court
Lacks Subject Matter Jurisdiction Over Them ................................................. 21

III.    The Individual Defendants Lack Standing to Bring Claims in a Chapter 15 Case.......... 24

Conclusion ................................................................................................................. 26

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acordia Ne., Inc.* v. *Thesseus Int'l Asset Fund NV*,
  No. 01 CIV. 5398 (RLC), 2003 WL 22057003 (S.D.N.Y. Sept. 4, 2003) ..............................15

*Alexander Interactive, Inc.* v. *Adorama, Inc.*,
  No. 12 Civ. 6608 (PKC) (JCF), 2014 WL 113728 (S.D.N.Y. Jan. 13, 2014) ........................20

*In re Aluminum Warehousing Antitrust Litig.*,
  90 F. Supp. 3d 219 (S.D.N.Y. 2015) ....................................................................................12

*Ashcroft* v. *Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................11

*In re Barclays Bank* v. *Kemsley*,
  44 Misc. 3d 773 (N.Y. Sup. Ct. 2014) .................................................................................25

*Bonilla* v. *Rotter*,
  36 A.D.3d 534 (1st Dep't 2007) ..........................................................................................17

*Buffalo Press Club* v. *Greene*,
  5 Misc. 501 (Super. Ct. Buffalo 1893), *aff'd*, 33 N.Y.S. 286 (Gen. Term 5th
  Dep't 1895) .....................................................................................................................18, 21

*Calip Dairies, Inc.* v. *Penn Station News Corp.*,
  262 A.D.2d 193 (2d Dep't 1999) .........................................................................................20

*In re Casual Male Corp.*,
  317 B.R. 472 (Bankr. S.D.N.Y. 2004) .................................................................................22

*DBT Gmbg* v. *J.L. Min. Co.*,
  544 F. Supp. 2d 364 (S.D.N.Y. 2008) ..................................................................................15

*Doucet* v. *Massachusetts Bonding & Ins. Co.*,
  180 A.D. 599 (1st Dep't 1917) ............................................................................................18

*Edge Grp. WAICCS LLC* v. *Sapir Grp. LLC*,
  705 F. Supp. 2d 304 (S.D.N.Y. 2010) ..................................................................................21

*Ellington* v. *EMI Music, Inc.*,
  24 N.Y.3d 239 (2014) ..........................................................................................................14

*Fed. Deposit Ins. Corp.* v. *Bank of New York Mellon*,
  369 F. Supp. 3d 547 (S.D.N.Y. 2019) ..................................................................................11

# TABLE OF AUTHORITIES
## (Continued)

Page(s)

*United States* v. *J.A. Jones Const. Grp., LLC*,
   333 B.R. 637 (E.D.N.Y. 2005) ...............................................................................25

*Joao* v. *Cenuco, Inc.*,
   376 F. Supp. 2d 380 (S.D.N.Y. 2005)....................................................................12

*LeMay* v. *H.W. Keeney, Inc.*,
   124 A.D.2d 1026 (4th Dep't 1986)..........................................................................12

*Leon* v. *Rockland Psychiatric Center*,
   232 F. Supp. 3d 420 (S.D.N.Y. 2017)....................................................................23

*McMahan* v. *McMahan*,
   131 A.D.3d 593 (2d Dep't 2015) ............................................................................20

*In re New 118th LLC*,
   396 B.R. 885 (Bankr. S.D.N.Y. 2008) ...................................................................23

*Nicosia* v. *Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016)....................................................................................11

*In re Ore Cargo, Inc.*,
   544 F.2d 80 (2d Cir. 1976)......................................................................................17

*In re Orion Pictures Corp.*,
   4 F.3d 1095 (2d Cir. 1993)......................................................................................23

*Osuna* v. *Citigroup Inc.*,
   No. 17-CV-1434 (RJS), 2018 WL 6547205 (S.D.N.Y. Sept. 28, 2018) ................15

*Overseas Ventures, LLC* v. *ROW Mgmt., Ltd.*,
   No. 12 Civ. 1033 (PAE), 2012 WL 5363782 (S.D.N.Y. Oct. 26, 2012) .................8

*In re Parade Place, LLC*,
   508 B.R. 863 (Bankr. S.D.N.Y. 2014) ...................................................................24

*Parmalat Capital Finance, Ltd.* v. *Bank of America Corp.*,
   639 F.3d 572 (2d. Cir. 2011)...................................................................................23

*In re Paso Del Norte Oil Co.*,
   755 F.2d 421 (5th Cir. 1985) ..................................................................................24

*Perforadora Oro Negro, S. de R.L. de C.V. et al.* v. *AMA Capital Partners, LLC et al.*,
   No. 18-1693 (SCC), ECF No. 1 ...............................................................................1

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*River Point Towers Co-op., Inc.* v. *Am. DG, Inc.*,
  No. 11 Civ. 6645 (JPO), 2012 WL 847322 (S.D.N.Y. 2012)..................................20

*RJ Capital, S.A.* v. *Lexington Capital Funding III, Ltd.*,
  No. 10 Civ. 25 (PGG), 2011 WL 3251554 (S.D.N.Y. July 28, 2011)......................................19

*Schriptek Mktg. Inc.* v. *Columbus McKinnon Corp.*,
  187 A.D.2d 800 (3d Dep't 1992) ............................................................15

*In re Shirley Duke Assocs.*,
  611 F.2d 15 (2d Cir. 1979).................................................................25

*Spinelli* v. *Nat'l Football League*,
  96 F. Supp. 3d 81 (S.D.N.Y. 2015) ...............................................12, 13

*Sunward Electronics, Inc.* v. *McDonald*,
  362 F.3d 17 (2d Cir. 2004)....................................................................8

*Union Exchange National Bank of New York* v. *Joseph*,
  231 N.Y. 250 (1921) ..........................................................................17

*United Water New Rochelle, Inc.* v. *City of New York*,
  180 Misc. 2d 241 (Sup. Ct. Westchester Cnt'y 1999), *appeal granted, order
  aff'd as modified*, 275 A.D.2d 464 (2d Dep't 2000) ................................21

*Usov* v. *Lazar*,
  No. 13-CV-818 (RWS), 2013 WL 3199652 (S.D.N.Y. June 25, 2013) .................................15

*VKK Corp.* v. *Nat'l Football League*,
  244 F.3d 114 (2d Cir. 2001)......................................................12, 14, 15

*Warberg Opportunistic Trading Fund, L.P.* v. *GeoResources, Inc.*,
  112 A.D.3d 78 (1st Dep't 2013) ..............................................................20

**STATUTES**

11 U.S.C. § 1509.....................................................................................4, 25

28 U.S.C. § 1334..................................................................................22, 25

28 U.S.C. § 1367.....................................................................................25

N.Y. Penal L. § 215.45 .............................................................................17

**OTHER AUTHORITIES**

96 N.Y. Jur. 2d *Specific Performance* § 1 (2019).....................................................20

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

Fed. R. Bankr. P. 7012 ................................................................................................................1

Fed. R. Civ. P. 12 ........................................................................................................................1

NYC Eth. Op. 1995-13 (N.Y.C. Assn. B. Comm. Prof. Jud. Eth.), 1995
WL 877125 (Nov. 1, 1995). Formal Opinion 1995-13 ...........................................................18

Asia Research and Capital Management Ltd. ("ARCM"), GHL Investments (Europe) Ltd. ("GHL"), and Ship Finance International Ltd. ("SFIL") (collectively, the "Bondholder Defendants"), by and through their undersigned counsel, file this memorandum of law in support of their motion to dismiss the Adversary Complaint (the "Complaint") by Fernando Perez-Correa, in his capacity as foreign representative of Perforadora Oro Negro, S. de R.L. de C.V. ("Perforadora"), Jose Antonio Cañedo-White, Carlos Williamson-Nasi, Gonzalo Gil-White, and Miguel Ángel Villegas-Vargas (Messrs. Cañedo-White, Williamson-Nasi, Gil-White, and Villegas-Vargas are collectively referred to as the "Individual Plaintiffs"). For the reasons that follow, the Bondholder Defendants respectfully request an order dismissing the Complaint in its entirety, with prejudice, pursuant to Fed. R. Civ. P. 12, made applicable to this proceeding by Fed. R. Bankr. P. 7012.[1]

## PRELIMINARY STATEMENT

This action is the fourth adversary proceeding brought in the name of Perforadora and its parent company, Integradora de Servicios Petroleros Oro Negro, S.A.P.I. de C.V. ("Integradora" or, together with Perforadora, "Oro Negro"), collaterally attacking high-profile, ongoing criminal investigations in Mexico concerning the alleged misuse of Oro Negro's funds by the company's former management.[2] This most recent attempt—styled as a breach of

---

[1] Notwithstanding anything in this Motion, the Bondholder Defendants reserve all rights concerning this Court's ability to enter a final order or judgment concerning the claims under Article III of the United States Constitution and do not consent to entry of such an order or judgment if it is later determined that the Court cannot enter final orders or judgments consistent with Article III of the United States Constitution.

[2] See Complaint, *Perforadora Oro Negro, S. de R.L. de C.V. et al.* v. *AMA Capital Partners, LLC et al.*, No. 18-1693 (SCC), ECF No. 1 (seeking injunctive relief to prevent the enforcement of an order by a Mexican judge related to a criminal investigation into the use of funds by Oro Negro's management); Complaint, *Perforadora Oro Negro* v. *Ercil*, No. 19-1294 (SCC), ECF No. 1 (seeking damages arising out of criminal investigations in Mexico on behalf of Oro Negro and its shareholder and former CEO, Mr. Gil-White); Complaint, *Perforadora Oro Negro, S. de R.L. de C.V. et al.* v. *Contrarian Capital Partners, LLP et al.*, No. 19-1301 (SCC), ECF No. 1 (same).

contractual releases signed in 2016 when Oro Negro restructured its public debt (the "2016 Releases")—has been brought jointly by the company's Mexican liquidator and four Individual Plaintiffs—all members of Oro Negro's former management who are currently being investigated in Mexico for criminal mismanagement of the debtors' assets.  A fifth target of that investigation—Oro Negro's former general counsel, Alonso Del Val-Echevarria—has already pleaded guilty to these criminal charges and is cooperating with prosecutors.  This action seeks both money damages and an injunction preventing the defendants from participating in investigations or prosecutions of the Individual Plaintiffs' alleged crimes pre-dating the 2016 Releases.

The alleged breach at the center of this case arises from a May 3, 2019 criminal complaint (the "May 3 Criminal Complaint") made to Mexican prosecutors by Defendants Oro Negro Primus, Oro Negro Laurus Pte., Ltd., Oro Negro Fortius Pte., Ltd., Oro Negro Decus Pte., Ltd., and Oro Negro Impetus Pte., Ltd. (the "Singapore Rig Owners"), all of which are former Oro Negro affiliates.  The Singapore Rig Owners allegedly came under the control of an ad-hoc group of bondholders (the "Ad-Hoc Group") in September 2017, when the bond trustee declared an event of default and exercised the bondholders' security right to take ownership of the shares of the Singapore Rig Owners' parent company.  Those shares are currently held on behalf of all bondholders, three of whom are Defendants, comprising half of the alleged members of the Ad-Hoc Group.  The May 3 Criminal Complaint—which was brought by the Singapore Rig Owners, not the Bondholder Defendants—alleges misconduct in 2014 and 2015; Plaintiffs allege that these claims were released in the 2016 Releases.

These claims cannot be sustained because they ignore the plain language of the Releases, and well-settled New York law (which governs the 2016 Releases) prohibiting contractual releases from discharging criminal liability.

*First*, the Complaint does not state a claim for breach of the 2016 Releases because the Bondholder Defendants are not alleged to have brought any released claims against any Plaintiff.  Plaintiffs allege that actions by the Singapore Rig Owners breached the agreement.  However, the 2016 Releases did not include any release of claims by the Singapore Rig Owners in favor of the Plaintiffs.  Under the 2016 Releases, the Bondholder Defendants gave releases to Oro Negro entities (including the Singapore Rig Owners), and Oro Negro entities gave releases to the Bondholder Defendants.  The Singapore Rig Owners did not release claims against other Oro Negro entities, nor did they release any claims against their former officers, directors, managers, or shareholders.  The Singapore Rig Owner claims at issue in the May 3 Criminal Complaint were never the subject of any release.

*Second*, the 2016 Releases released claims by the Bondholder Defendants and their "***current and former*** shareholders, affiliates, direct and indirect parents, subsidiaries, managed accounts or funds, investment managers, advisees, principals, employees, agents, officers, directors, trustees, partners, members, master servicers, special servicers, trusts, professionals, attorneys, financial advisors, fund advisors, and other representatives of each of them."  (Compl. Ex. A (2016 Releases) at 2 (emphasis added).)  The Singapore Rig Owners were the beneficiaries of these Releases as one of several "Issuer Released Parties" under the agreement; they had no affiliation with the Bondholder Defendants at that time.  Plaintiffs attempt to get around this contractual language by arguing that the Singapore Rig Owners came under the "control" of the Ad-Hoc group more than a year later in September 2017, but that

ignores the plain limitation in the agreement that the Bondholder Defendants only bound "*current and former*" associated parties, not future associated parties. The attempt to shoehorn the Singapore Rig Owners into the Bondholder Defendants' Releases cannot be reconciled with the plain language of the governing contract.

*Third*, the 2016 Releases did not encompass criminal claims, or require any releasing party to forebear from pursuing any criminal complaints. While Plaintiffs allege that the Singapore Rig Owners' "efforts to initiate . . . a criminal proceeding" violated the 2016 Releases (Compl. ¶¶ 171, 176), there is no language in the contract that released criminal claims. To the contrary, the agreement only released claims to "the extent permitted under applicable law" and, under New York law, an agreement to refrain from initiating a criminal investigation would be illegal and unenforceable.

*Fourth*, the Individual Plaintiffs' claims should be dismissed because they are not themselves debtors, and they seek recoveries and injunctions for their own personal gain and to prevent criminal investigations into their management of the debtors pre-bankruptcy. These non-core, non-debtor breach of contract claims do not "arise under title 11," and do not arise in or relate to a case under title 11. The jurisdictional requirements of 28 U.S.C. § 1334(b) are therefore not met. Moreover, these Individual Plaintiffs, none of whom is a foreign representative under Chapter 15, lack standing to sue or be sued in a Chapter 15 case. *See* 11 U.S.C. § 1509(b)(1). Chapter 15 only confers that right on foreign representatives. Thus, these non-debtor claims should be dismissed.

## RELEVANT FACTUAL BACKGROUND

In April 2016, Integradora restructured $900 million in bonds issued by its subsidiary Oro Negro Drilling, Pte. (the "Bonds"). (Compl. ¶¶ 77, 83.) In connection with that restructuring, the bond agreement was amended (the "Amended Bond Agreement"), and that

4

amendment required the members of the then-existing ad-hoc group of bondholders, including

the Bondholder Defendants, to execute the 2016 Releases, which released certain then-existing

bondholder claims against Integradora and its subsidiaries, including Perforadora and the

Singapore Rig Owners.  (*Id.* ¶¶ 67, 83, 90–91.) [3]   At that time, the Singapore Rig Owners were

indirect subsidiaries of Integradora, and direct subsidiaries of Oro Negro Drilling, Pte.  (*Id.* ¶¶

63, 67.)[4]  Integradora, Perforadora, the Singapore Rig Owners, and other Oro Negro entities also

executed the 2016 Releases releasing certain of their claims against bondholders.  (Compl. Ex. A

(2016 Releases) at 3.)

       This action is a straightforward breach of contract case, in which Plaintiffs allege

that criminal complaints regarding Oro Negro's former management made by the *Singapore Rig

Owners*—not the bondholders, and not the Bondholder Defendants—to Mexican prosecutors

breached the 2016 Releases.  (Compl. ¶¶ 171, 176.)  As the plain language of the 2016 Releases

shows, the criminal complaints do not fall within the scope of the claims released by any party—

either the Bondholder Defendants or the Singapore Rig Owners—and as a result, this action

should be dismissed.

### A.    The 2016 Releases

       The 2016 Releases were signed in April 2016 by each of the Bondholder

Defendants, as well as other bondholders that are not defendants here.  (*Id.* ¶¶ 90, 94.)  The

---

[3]    Plaintiffs attached the 2016 Releases as Exhibit A to the Complaint, but did not attach the Amended Bond
Agreement.  The 2016 Releases were signed in connection with, and incorporated defined terms from, the
Amended Bond Agreement.  (*See* Compl. ¶¶ 90, 96 n.10; *id.* Ex. A (2016 Releases) at 2.)  Several defined terms
in the 2016 Releases are defined in the Amended Bond Agreement, a copy of which is attached as Exhibit 1 to
the Clareman Declaration.

[4]    The Amended Bond Agreement defined each Singapore Rig Owner as "a directly 100% (one hundred per cent)
owned subsidiary of the Issuer," which, in turn, was a subsidiary of Integradora.  (Clareman Decl. Ex. 1
(Amended Bond Agreement) at 14, 21–22.)  Plaintiffs also allege that Integradora "owns Oro Negro Drilling
[and] the Singapore Rig Owners."  (Compl. ¶¶ 62, 67.)

Releases covered claims by each Bondholder Defendant, as well as other "Bondholder Parties,"

defined in the Amended Bond Agreement to include each "Bondholder, together with each of the

Bondholder's predecessors, successors and assigns, and the ***current and former*** shareholders,

affiliates, direct and indirect parents, subsidiaries, managed accounts or funds, investment

managers, advisees, principals, employees, agents, officers, directors, trustees, partners,

members, master servicers, special servicers, trusts, professionals, attorneys, financial advisors,

fund advisors, and other representatives of each of them."  (Compl. Ex. A (2016 Releases) at 2

(emphasis added); *see also* Compl. ¶ 92.)  ***Future*** shareholders, affiliates, and other parties that

became associated with the Bondholders after the Releases were signed are not included in the

definition of Bondholder Parties or otherwise mentioned in the 2016 Releases.  (*See* Compl. Ex.

A (2016 Releases) at 2 (emphasis added*)*.)  The only future parties bound by the 2016 Releases

were "successors and assigns" of the Bondholders.  (*Id.*; Compl. ¶ 92.)

The Bondholder Parties released claims against the "Issuer Released Parties,"

defined in the Amended Bond Agreement to mean Integradora, its direct and indirect subsidiaries

(including the Singapore Rig Owners) and their predecessors, successors and assigns, and "the

current and former shareholders, affiliates, direct and indirect parents, subsidiaries, principals,

employees, agents, officers, directors, trustees, partners, members, master servicers, special

servicers, trusts, trustees, professionals, attorneys, and financial advisors of each of the

foregoing, in each case in their capacity as such."  (Compl. Ex. A (2016 Releases) at 2–3;

Clareman Decl. Ex. 1 (Amended Bond Agreement) Clause 15.7; Compl. ¶ 92.)

The release given by the Bondholder Parties to the Issuer Released Parties stated,

in relevant part, that:

> ***[E]ach Issuer Released Party shall*** be deemed released and discharged ***by each
> of the Bondholder Parties, to the fullest extent permitted under applicable law,***

from any and all causes of action and any other claims, debts, obligations, rights,
suits, damages, actions, derivative claims, remedies, and liabilities whatsoever
existing as of the Amendment Date (collectively, the "Bondholder Released
Claims"), whether known or unknown, foreseen or unforeseen, in law, at equity,
or otherwise, whether for tort, contract, including without limitation claims
arising out of violations of federal or state securities laws, fraud,
misrepresentation (whether intended or negligent), breach of duty (including the
duty of candor), any laws or statutes similar to the foregoing, or otherwise, ***based
in whole or in part upon any act or omission, transaction, or other occurrence
or circumstances existing or taking place prior to the Amendment Date arising
from or related in any way to any Parent Group Company***. . . .

(Compl. Ex. A (2016 Releases) at 3 (emphasis added); *see also* Compl. ¶ 96.)[5]  Pursuant to this

language, the Singapore Rig Owners—as one of several Issuer Released Parties—were released

from the Bondholder Released Claims.

The 2016 Releases included reciprocal releases by Oro Negro—including the

Singapore Rig Owners—to the Bondholder Parties.  Specifically, the 2016 Releases provided

that "[e]ach Parent Group Company"—defined in the Amended Bond Agreement to mean

Integradora "and its direct and indirect subsidiaries" (including the Singapore Rig Owners, each

of which signed the 2016 Releases)—"agrees that . . . each of the Bondholder Parties shall be

deemed released and discharged by each Issuer Released Party."  (Compl. Ex. A (2016 Releases)

at 3; Clareman Decl. Ex. 1 (Amended Bond Agreement) Clause 15.6.)  The releases by the

Singapore Rig Owners and other Parent Group Companies did not, by their terms, release claims

against other Issuer Released Parties, intercompany claims, or claims against Oro Negro's

managers, employees, or shareholders.

---

[5]  In addition to the 2016 Releases, the Complaint describes other releases contained in the Amended Bond
Agreement, which are separate from the 2016 Releases.  (Compl. ¶¶ 98–100.)  Plaintiffs do not, however, assert
any claims for alleged breaches of the Amended Bond Agreement releases, which are governed by Norwegian
law and subject to the exclusive jurisdiction of Norwegian courts.  (*See* Clareman Decl. Ex. 1 (Amended Bond
Agreement) Clauses 18.1–18.3.)

None of the releases given in the 2016 Releases released criminal claims, or

included an agreement to forbear from reporting potential criminal conduct.  (*See generally*

Compl. Ex. A (2016 Releases).).  All of the 2016 Releases are governed by New York law and

are subject to the exclusive jurisdiction of New York state and federal courts, and include

specific jurisdictional consents for litigation related to the Releases in the federal and state courts

of New York.[6]  (*Id.* at 6.)

## B.    The Singapore Rig Owners' May 3 Criminal Complaint

On September 11, 2017, Perforadora filed for bankruptcy in Mexico, known as

*concurso mercantil*, and was followed shortly by Integradora.  (Compl. ¶ 26.)  In

September 2017, the bond trustee under the Amended Bond Agreement declared an event of

default on the Bonds, and later "attempted to exercise security rights by taking over the

ownership and management of the Singapore Rig Owners."  (*Id.* ¶ 49.)  The Complaint alleges

that an Ad-Hoc Group of bondholders (including the three Bondholder Defendants and others)

has "control[led] the Singapore Rig Owners since September 2017," although Perforadora and

Integradora "contest" the lawfulness of that control.  (*Id.* ¶¶ 50, 52.)

In 2018, the Singapore Rig Owners filed criminal charges with prosecutors in

Mexico against several of Oro Negro's former managers, including certain plaintiffs here.[7]  (*Id.*

---

[6]    The consent to personal jurisdiction contained in the 2016 Releases is limited to claims related to that
agreement.  *See Sunward Electronics, Inc.* v. *McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) ("A plaintiff must
establish the court's jurisdiction with respect to *each* claim asserted."); *see also Overseas Ventures, LLC* v.
*ROW Mgmt., Ltd.*, No. 12 Civ. 1033 (PAE), 2012 WL 5363782, at *3 (S.D.N.Y. Oct. 26, 2012) (explaining that
"to the extent that the forum selection clause does not supply personal jurisdiction over a particular claim or
claims, the Court inquires whether there is personal jurisdiction over [the defendant] under principles of New
York law, based either on general jurisdiction, or specific jurisdiction" (internal citations omitted).)

[7]    Plaintiffs' Complaint includes unsupported allegations that the criminal charges were based on "fabricated
evidence" (Compl. ¶¶ 119, 124); while that characterization is unfounded, it is also irrelevant to the instant
motion or the claims asserted here, which are simply breach of contract claims concerning the scope of the 2016
Releases.

¶ 120.)  In September 2018, prosecutors in Mexico sought and obtained a seizure order (the

"First Seizure Order"), which froze approximately $100 million in the "Mexican Trust," which is

a trust account from which Oro Negro distributed cash it received from its business operations.

(*Id*. ¶¶ 72–73, 120.)  In October 2018, the Singapore Rig Owners obtained a "restitution order"

which provided them with the authority to take possession of oil rigs owned by Oro Negro in

Mexico.  (*Id*. ¶ 121.)  These orders been extensively litigated by Oro Negro in Mexican courts.

Plaintiffs allege that on May 3, 2019, the Singapore Rig Owners filed the May 3

Criminal Complaint with the Mexico City Prosecutor's Office, alleging that "in 2014 and 2015,

Integradora received approximately $65 million from Perforadora, and that the receipt was a

criminal violation."  (*Id*. ¶¶ 124–25.)  These transfers allegedly also involved a transfer of

approximately $50 million from the Singapore Rig Owners to Perforadora, and two additional

transfers totaling approximately $13.5 million from Perforadora to Integradora.  (*See id.* ¶ 138.)

After receiving the May 3 Criminal Complaint, the Mexican prosecutor—not the Singapore Rig

Owners, the Bondholder Defendants, or any of their counsel—sought and obtained arrest

warrants for the Individual Plaintiffs as well as the former foreign representative, Alonso Del

Val-Echevarria, who served as chief legal counsel of Integradora until he resigned in April 2019.

(*Id*. ¶¶ 126, 138, 139.)[8]  The same Mexican prosecutor also sought and obtained an extension of

the First Seizure Order freezing the funds in the Mexican Trust (the "New Seizure Order") in

June 2019.  (*Id.* ¶ 160.)

On August 22, Mr. Del Val pleaded guilty to the crimes charged in the arrest

warrants—among others—and submitted a sworn affidavit to Mexican prosecutors, which he

---

[8]    The Individual Plaintiffs, who are Mexican nationals who currently reside in Miami, Florida, acknowledge that
they are wanted in Mexico on suspicion of criminal wrongdoing.  (Compl. ¶ 131.)  The Complaint also states
that the Individual Plaintiffs are subjects of INTERPOL "red notices," calling for their arrest.  (*See id.* ¶ 137.)

later expanded upon in sworn testimony.  (*Id.* ¶ 162; *see* Clareman Decl. Ex. 2-T (Del Val Affidavit[9]).)  His affidavit and testimony accuse Oro Negro's former managers, and Mr. Gil-White in particular, of financial mismanagement of Perforadora's funds.  (*See, e.g.*, Clareman Decl. Ex. 2-T (Del Val Affidavit) at 7 (confirming that the transactions that formed the basis of the arrest warrant were not authorized by the trust agreement); *id.* at 5 (explaining that Mr. Gil-White was the architect of this scheme); Clareman Decl. Ex. 3-T (Del Val Testimony) at 3, 5, 6, 7.)  Mr. Del Val also testified that Plaintiffs' claims that evidence supporting the First Seizure Order was "fabricated" were merely Plaintiffs' "defense strategy" and lacked any evidentiary basis.  (*See* Compl. ¶ 119; Clareman Decl. Ex. 2-T (Del Val Affidavit) at 6; Ex. 3-T (Del Val Testimony) at 5.)  Civil and criminal matters concerning Oro Negro have generated significant public interest in Mexico, and have been widely reported on in the press.  (*See* Compl. ¶¶ 132, 136, 137.)

### C.    Plaintiffs' Causes of Action

This action was commenced on September 26, 2019, and alleges two causes of action: one claim for breach of contract, and a separate claim for specific performance.  Both allege breaches of the 2016 Releases by the Bondholder Defendants and the Singapore Rig Owners based on the May 3 Criminal Complaint by the Singapore Rig Owners.  (Compl. ¶¶ 171, 172, 176.)  Plaintiffs seek money damages, specific performance, and "a permanent injunction enjoining Defendants from any actions in violation of the 2016 Releases, including initiating or causing to initiate, or taking actions in furtherance of, criminal investigations against Oro Negro

---

[9]    A copy of Mr. Del Val's affidavit, which is described in the Complaint (*see id.* ¶¶ 162-63), is attached as Exhibit 2 to the Clareman Declaration, and a certified translation is attached as Exhibit 2-T.  A copy of Mr. Del Val's related sworn testimony is attached as Exhibit 3 to the Clareman Declaration, and a certified translation is attached as Exhibit 3-T.

and/or its directors or employees for conduct and supposed damages that the 2016 Releases

released and discharged."  (*Id.* ¶ 178.)

## ARGUMENT

### I.    Plaintiffs' Breach of Contract Claims Fail to State a Claim on Which Relief May Be Granted

To survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ.

P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim

to relief that is plausible on its face.'"  *Fed. Deposit Ins. Corp.* v. *Bank of New York Mellon*, 369

F. Supp. 3d 547, 552 (S.D.N.Y. 2019) (citing *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009)).

While reasonable inferences may be drawn in plaintiff's favor, "pleadings that . . . are no more

than conclusions[] are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679.

When presented with a motion to dismiss pursuant to Rule 12(b)(6), a court may

consider documents that are incorporated by reference in the complaint, and "even where a

document is not incorporated by reference, the court may nevertheless consider it where the

complaint relies heavily upon its terms and effect, which renders the document integral to the

complaint."  *Nicosia* v. *Amazon.com, Inc.*, 834 F.3d 220, 234 (2d Cir. 2016) (quoting

*Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).  Although courts generally

accept plaintiffs' allegations as true, the court "need not accept as true an allegation that is

contradicted by documents on which the complaint relies."  *In re Aluminum Warehousing*

*Antitrust Litig.*, 90 F. Supp. 3d 219, 231 (S.D.N.Y. 2015) (citing *In re Bristol–Myers Squibb Sec.*

*Litig.,* 312 F. Supp. 2d 549, 555 (S.D.N.Y. 2004)).

Under New York law, "the initial interpretation of a contract is a matter of law for

the court to decide," *VKK Corp.* v. *Nat'l Football League*, 244 F.3d 114, 129 (2d Cir. 2001), and

a "breach of contract claim must be dismissed where the unambiguous terms of the contract do

not support a plaintiff's claim." *Spinelli* v. *Nat'l Football League*, 96 F. Supp. 3d 81, 131

(S.D.N.Y. 2015). "The provisions of the parties' agreements establish the rights of the parties

and prevail over conclusory allegations in the complaint . . . . The Court cannot 'supply a

specific obligation the parties themselves did not spell out.'" *Id.* (internal citations omitted).

Because New York law "disfavors agreements intended to absolve a party from the

consequences of its wrongdoing," releases "are subject to the 'closest of judicial scrutiny.'"

*Joao* v. *Cenuco, Inc.*, 376 F. Supp. 2d 380, 382–83 (S.D.N.Y. 2005) (quoting *Golden Pacific*

*Bancorp.* v. *Federal Deposit Ins. Corp.*, 273 F.3d 509, 515 (2d Cir. 2001)); *see also LeMay* v.

*H.W. Keeney, Inc.*, 124 A.D.2d 1026, 1026 (4th Dep't 1986).

     **A.**     **The May 3 Criminal Complaint Does Not Assert Bondholder Released Claims, and the Singapore Rig Owners Did Not Release Claims against Oro Negro's Managers or Shareholders**

     The Complaint should be dismissed in its entirety as to the Bondholder

Defendants because none of the claims they released—either for themselves or other Bondholder

Parties—in the 2016 Releases is asserted in the May 3 Criminal Complaint. Plaintiffs do not

allege that the Bondholder Defendants have asserted any of their own previously released claims,

or filed any criminal charges with Mexican prosecutors. Rather, the claims at issue here are

criminal complaints by the Singapore Rig Owners against Oro Negro's former management.

These are not bondholder claims, and so the breach of contract claims should be dismissed.

     The Complaint is premised on a criminal complaint made by the Singapore Rig

Owners against Oro Negro's former management. (Compl. ¶¶ 171–72.) These claims were not

released in the 2016 Releases. When the 2016 Releases were signed, the Singapore Rig Owners

were not "Bondholder Parties"—they were "Issuer Released Parties," who were released from

claims by the Bondholder Parties and who released claims against the Bondholder Parties. The

2016 Releases did not release intercompany claims among the Issuer Released Parties, or claims

by the Singapore Rig Owners against their former managers or shareholders. Plaintiffs'

Complaint improperly seeks to "supply a specific obligation the parties themselves did not spell

out" *Spinelli*, 96 F. Supp. 2d at 131—namely, a release by the Singapore Rig Owners against Oro

Negro's former managers and shareholders. These releases have no basis in the plain and

unambiguous language of the 2016 Releases.

### B. The Bondholders Did Not Release Claims on Behalf of the Singapore Rig Owners or Future Affiliates

Lacking any basis to argue that the Singapore Rig Owners' criminal claims

against Oro Negro's managers were released, Plaintiffs instead resort to an argument that the

Bondholder Defendants' Releases bind "any entities owned and/or controlled by the Ad-Hoc

Group, including the Singapore Rig Owners, which the Ad-Hoc Group purports to control."

(Compl. ¶ 170.) This claim also cannot withstand a plain reading of the relevant contractual

language.

The Bondholder Defendants released claims by their "predecessors, successors

and assigns, and the ***current and former*** shareholders, affiliates, direct and indirect parents,

subsidiaries, managed accounts or funds, investment managers, advisees, principals, employees,

agents, officers, directors, trustees, partners, members, master servicers, special servicers, trusts,

professionals, professionals, attorneys, financial advisors, and other representatives of each of

them." (Compl. Ex. A (2016 Releases) at 2–3 (emphasis added); *see also* Clareman Decl. Ex. 1

(Amended Bond Agreement) Clause 15.7; Compl. ¶ 92.) The "controlled by" standard in

Plaintiffs' Complaint does not appear in the contract's text, nor do Plaintiffs explain how the

relationship between the three Bondholder Defendants—investors in bonds issued by Oro Negro

Drilling, Pte., administered by Nordic Trustee, which now holds 100% of the Singapore Rig

Owners—and the Singapore Rig Owners, fits into any of these contractual categories.

13

Even more problematic for Plaintiffs' liability theory is that the Singapore Rig Owners were indisputably *not* "controlled by" the Bondholders at the time the Releases were signed. The "control" of the Singapore Rig Owners on which Plaintiffs' stake their claim arose in September 2017—more than a year after the 2016 Releases were executed. (Compl. ¶¶ 50, 93.) This fact is fatal to their claims, because under New York law, "[a]bsent explicit language demonstrating the parties' intent to bind future affiliates of the contracting parties, the term 'affiliate' includes only those affiliates in existence at the time that the contract was executed." *Ellington* v. *EMI Music, Inc.*, 24 N.Y.3d 239, 246 (2014); *see also VKK Corp.*, 244 F.3d at 130 (finding that a release that covered "each Member Club" and their "affiliates" and "successors" did not include affiliates that arose after the release was signed).

That principle unambiguously applies to the 2016 Releases. The definition of Bondholder Parties specifies that it applies only to "***current and former*** shareholders, affiliates, . . . agents, . . . and other representatives," and not future parties associated with the Bondholders. (Compl. Ex. A (2016 Releases) at 2 (emphasis added); *see also* Clareman Decl. Ex. 1 (Amended Bond Agreement) Clause 15.7.) *See Schriptek Mktg. Inc.* v. *Columbus McKinnon Corp.*, 187 A.D.2d 800, 800–01 (3d Dep't 1992) (holding that in the phrase "proprietary information and knowledge," "proprietary" must be read to modify both "information" and "knowledge"); *Acordia Ne., Inc.* v. *Thesseus Int'l Asset Fund NV*, No. 01 CIV. 5398 (RLC), 2003 WL 22057003, at *2 (S.D.N.Y. Sept. 4, 2003) (holding that, in the phrase "negligent act, error or omission," "negligent" modified each word that followed it). The Second Circuit decision in *VKK Corp.* v. *National Football League* is directly on point, and interpreted a similar release, governed by New York law, to foreclose application to future affiliates based on the plain language of the release at issue, and the principle of *expressio unius*

14

*est exclusio alterius*—"[t]o express or include one thing implies the exclusion of the other, or of

the alternative." *VKK Corp.*, 244 F.3d at 130 & n.12 (quoting Black's Law Dictionary).  The

same result should obtain here.  Oro Negro's former managers are, according to the Complaint,

"sophisticated commercial actors who could have specifically referred to future [affiliates,

agents, representatives, and other future parties] had they intended to include them in the

Release." *Id.* at 130; *see*, *e.g.*, Compl. ¶¶ 19, 23, 24, 32, 36, 41, 52, 63.  They did not do so.[10]

The unambiguous terms of the 2016 Releases by the Bondholder Defendants did

not release any claims by the Singapore Rig Owners, who were unaffiliated with them at the

time.  At most, the Singapore Rig Owners were *future* affiliates, agents, or representatives of the

Bondholder Defendants, and as such are not subject to any of their Releases.  As a result, the

Complaint should be dismissed.

## C.      The 2016 Releases Did Not Release Criminal Claims

The breach of contract claims alleged in the Complaint should be dismissed for

the additional reason that the 2016 Releases did not purport to extinguish any rights by any party

to report criminal activity to appropriate prosecutorial authorities.  Any such agreement would,

in any event, be unenforceable under New York law, and the 2016 Releases on their face only

---

[10]   Although Plaintiffs did not plead a separate claim for breach of the implied covenant of good faith and fair
dealing, Plaintiffs allege in a single conclusory sentence that the "Singapore Rig Owners' efforts to initiate or
cause others to initiate . . . a criminal proceeding" also violated an implied covenant of good faith and fair
dealing in the 2016 Releases.  (Compl. ¶¶ 172, 177.)  To the extent that Plaintiffs' complaint could be construed
as alleging a claim for breach of an implied covenant of good faith and fair dealing, that claim would also fail to
plead a plausible claim to relief because Plaintiffs fail to allege any implied promise that can be inferred from,
and is consistent with, the express terms of the agreement.  *See Osuna* v. *Citigroup Inc.*, No. 17-CV-1434
(RJS), 2018 WL 6547205, at *4–5 (S.D.N.Y. Sept. 28, 2018); *DBT Gmbg* v. *J.L. Min. Co.*, 544 F. Supp. 2d 364,
384 (S.D.N.Y. 2008).  Further, any such claim would be subject to dismissal as duplicative of Plaintiffs'
claimed breach of the express terms of the contract, as there is no difference between the underlying allegations
supporting with the claims.  *Usov* v. *Lazar*, No. 13-CV-818 (RWS), 2013 WL 3199652, at *6 (S.D.N.Y. June
25, 2013) (explaining that a breach of an implied covenant claim "will be dismissed . . . as redundant where the
conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express
provision of the underlying contract").

release claims "to the fullest extent permitted under applicable law." (Compl. Ex. A (2016 Releases) at 3.) New York law does not permit releases to require parties to forebear from reporting crimes, and so the Releases cannot be construed to encompass the claims in the May 3 Criminal Complaints.

*First*, the 2016 Releases do not mention criminal complaints in the lengthy recitation of the types of claims that were subject to the Bondholder release. The list includes "any and all causes of action and any other claims, debts, obligations, rights, suits damages, actions, derivative claims, remedies, and liabilities . . . in law, at equity, or otherwise, whether for tort, contract, including without limitation claims arising out of violations of federal or state securities laws, fraud, misrepresentation (whether intended or negligent), breach of duty (including duty of candor), [and] any laws or statutes similar to the foregoing." (Compl. Ex. A (2016 Releases) at 3.) Notwithstanding the lengthy list of civil rights and remedies reflected in this release, there is no mention of criminal complaints or criminal laws and, as a result, the 2016 Releases should not now be interpreted to include such additional releases. *In re Ore Cargo, Inc.*, 544 F.2d 80, 82 (2d Cir. 1976) ("Applying the maxim *expressio unius est exclusio alterus*, the failure of [a party] to include a . . . specific reference to tort claims precludes our divining or implying such a right on the basis of the general language of the agreement," which only included 'credits, claims, demands and any other property, rights and interests.'").

*Second*, an agreement among private parties that would prohibit a party from reporting a crime is illegal under Section 215.45 of the New York Penal Law. Section 215.45 makes it a Class A misdemeanor to accept or confer "any benefit upon an agreement or understanding" to "refrain from initiating a prosecution for a crime." N.Y. Penal L. § 215.45(1). If, as Plaintiffs, allege, the Singapore Rig Owners' "efforts to initiate . . . a criminal proceeding"

16

breached the 2016 Releases (Compl. ¶ 171), the 2016 Releases would be illegal under

Section 215.45 of the Penal Law, and would be unenforceable. *See Bonilla* v. *Rotter*, 36 A.D.3d

534, 535 (1st Dep't 2007) (recognizing that "[i]t is the settled law of this State . . . that a party to

an illegal contract cannot ask a court of law to help him carry out his illegal object," and

therefore finding the contract void) (citing *Stone* v. *Freeman*, 298 N.Y. 268, 271 (1948)).

      *Third*, New York contract law similarly provides that agreements that require the

concealment of a crime or otherwise prohibit a party from initiating a criminal prosecution are

unenforceable as a matter of common law.  In *Union Exchange National Bank of New York* v.

*Joseph*, 231 N.Y. 250 (1921), the Court of Appeals declared that where parties seek to enforce a

private agreement not to report a crime, "the law will leave the parties where it finds them." *Id.*

at 252.  As Judge Cardozo explained for the Court,

> [t]he principle thus vindicated is simple and commanding.  There is to be no
> traffic in the privilege of invoking the public justice of the state.  One may press a
> charge or withhold it as one will.  One may not make action or inaction dependent
> on a price.  The state has, indeed, no interest to be promoted by the prosecution of
> the innocent . . . .  The state has an interest, however, in preserving to
> complainants the freedom of choice, the incentives to sincerity, which are the
> safeguards and the assurance of the prosecution of the guilty.

*Id.* at 253–54 (internal citations omitted).  *Union Exchange* is consistent with a long-standing

rule in New York that courts will not enforce an agreement to abstain from reporting a crime.[11]

Thus, to the extent the 2016 Releases purported to prohibit any party from reporting criminal

---

[11]   *See Doucet* v. *Massachusetts Bonding & Ins. Co*., 180 A.D. 599, 602 (1st Dep't 1917) (declining to award
damages for breach of a contract not to initiate a criminal prosecution for embezzlement, and explaining that
"[i]t is a general rule and without any exception . . . that such agreements are against public policy and that the
court will refuse to extend its aid to either party thereto"); *Buffalo Press Club* v. *Greene*, 5 Misc. 501, 508
(Super. Ct. Buffalo 1893) ("The rule is everywhere recognized that agreements to forbear prosecution or of
bringing indictments to trial . . . or to interfere with the course of justice so as to prevent the enforcement of the
law in criminal actions, are contrary to public policy and void."), *aff'd*, 33 N.Y.S. 286 (Gen. Term 5th Dep't
1895).

conduct to appropriate authorities, the Releases would be unenforceable as a matter of public

policy, and Plaintiffs' breach of contract claim should be dismissed.

Attorney ethics rules also confirm that agreements to abstain from reporting

criminal activity are unenforceable and illegal, and caution attorneys against negotiating such

agreements. The New York City Bar Association has offered guidance for attorneys

"contemplating a settlement in a civil matter that includes an agreement not to report a crime."

NYC Eth. Op. 1995-13 (N.Y.C. Assn. B. Comm. Prof. Jud. Eth.), 1995 WL 877125 (Nov. 1,

1995). Formal Opinion 1995-13 states:

> [A] lawyer should not undertake to negotiate a settlement that includes a non-reporting agreement without full disclosure that the presence of such an agreement may render the entire settlement unenforceable by either side. Should the aggrieved party choose to report the defendant's conduct after the defendant has performed pursuant to the settlement, the defendant will not be able either to prevent a prosecution or to obtain damages.

*Id.* at 2. Although the New York City Bar concluded that an attorney may ethically include such

a provision in a contract, the Formal Opinion concluded that the agreement not to report a crime

would still be unenforceable because it is illegal and because it is against public policy.

Because Plaintiffs' interpretation of the 2016 Releases as alleged would be illegal

and unenforceable, that interpretation is foreclosed by the express language of the Releases. The

2016 Releases make clear that they are only enforceable "to the fullest extent permitted under

applicable law." (Compl. Ex. A (2016 Releases) at 3.) The Releases further state that "each

provision of this Release shall be interpreted so as to be effective and valid under applicable law,

but if any provision of this Release shall be prohibited by or invalid under applicable law, such

provision shall be ineffective to the extent of such prohibition or invalidity." (*Id.* at 6.) Because

New York law prohibits the enforcement of contracts to refrain from initiating a prosecution,

Plaintiffs fail to plead a plausible claim that the May 3 Criminal Complaint breached the 2016 Releases.

### D.    Plaintiffs Fail to State a Claim for Specific Performance

In addition to their breach of contract claim for damages, Plaintiffs also assert a second cause of action seeking specific performance of the 2016 Releases.  Specifically, Plaintiffs seek an injunction enjoining all defendants from "any action in violation of the 2016 Releases, including initiating or causing to initiate, or taking actions in furtherance of, criminal investigations against Oro Negro and/or its directors or employees for conduct and supposed damages that the 2016 Releases released and discharged."  (Compl. ¶ 178.)

Although Plaintiffs plead specific performance as a standalone claim, it is an equitable remedy for a breach of contract, rather than a separate cause of action.  *See RJ Capital, S.A.* v. *Lexington Capital Funding III, Ltd.,* No. 10 Civ. 25 (PGG), 2011 WL 3251554, at *16 (S.D.N.Y. July 28, 2011) (dismissing claim for specific performance because it is a remedy for breach of contract and not a separate cause of action); *Warberg Opportunistic Trading Fund, L.P.* v. *GeoResources, Inc.*, 112 A.D.3d 78, 86–87 (1st Dep't 2013) (("[S]pecific performance is an equitable remedy for a breach of contract, rather than a separate cause of action.") (citation omitted)); *accord* 96 N.Y. Jur. 2d *Specific Performance* § 1 (2019).  Under New York law, specific performance is an "extraordinary equitable remedy," and requires a plaintiff to establish, in addition to breach, that:  "(1) a valid contract exists between the parties; (2) plaintiff has substantially performed under the contract and is willing and able to perform its remaining obligations; (3) defendant is able to perform its obligations; and (4) plaintiff has no adequate remedy at law."  *River Point Towers Co-op., Inc.* v. *Am. DG, Inc.*, No. 11 Civ. 6645 (JPO), 2012 WL 847322, at *2–3 (S.D.N.Y. 2012) (quotation omitted).  The remedy "is inappropriate where the terms of the underlying contract are indefinite or leave room for reasonable minds to disagree

19

over its performance." *Alexander Interactive, Inc.* v. *Adorama, Inc.*, No. 12 Civ. 6608 (PKC) (JCF), 2014 WL 113728, at*4 (S.D.N.Y. Jan. 13, 2014).

For the reasons explained above, Plaintiffs have failed plausibly to allege that the May 3 Criminal Complaint breached the 2016 Releases. Accordingly, the specific performance claim should be dismissed. *See McMahan* v. *McMahan*, 131 A.D.3d 593, 94 (2d Dep't 2015) (affirming dismissal of a specific performance claim because the "unambiguous terms of [the agreement] conclusively established that it did not contain the terms that the plaintiff alleged that the defendant had breached or on which she sought specific performance"); *Calip Dairies, Inc.* v. *Penn Station News Corp.*, 262 A.D.2d 193, 194 (2d Dep't 1999) (affirming dismissal of a specific performance claim because "the clear and unambiguous terms of the parties' agreement" demonstrated that the performance sought was not required under the contract).

Moreover, New York courts "will not enforce or compel the specific performance of a contract where the performance compelled thereby will bring about a result which is detrimental to the public interest." *United Water New Rochelle, Inc.* v. *City of New York*, 180 Misc. 2d 241, 247 (Sup. Ct. Westchester Cnt'y 1999), *appeal granted, order aff'd as modified*, 275 A.D.2d 464 (2d Dep't 2000) (citing *Beasley* v. *Texas & Pacific Railway Co.*, 191 U.S. 492 (1903)). As explained above, New York courts will not enforce a release of criminal claims because such a release is against the public interest. The specific performance claim seeks to prohibit the Defendants from "taking actions in furtherance of criminal investigations against Oro Negro and/or its directors or employees. . . ." (Compl. ¶ 178.) This is manifestly contrary to the public interest and cannot be granted under New York law. *See Buffalo Press Club*, 5 Misc. at 508 (recognizing that it is against public policy to enforce an agreement to "suppress[] evidence against a party charged with a crime.").

20

In addition, the specific performance claim should be dismissed as to the Bondholder Defendants for the additional reason that the Complaint does not allege that the Bondholder Defendants are capable of providing any of the requested relief from prosecution. "[T]he New York Court of Appeals has made plain [that] a court should not order specific performance, or other equitable relief, unless the defendant is capable of complying: 'The court will not make what may prove to be a futile order.'" *Edge Grp. WAICCS LLC* v. *Sapir Grp. LLC*, 705 F. Supp. 2d 304, 319 (S.D.N.Y. 2010) (quoting *S.E.S. Imps., Inc.* v. *Pappalardo,* 53 N.Y.2d 455, 464 (1981)).[12]

Plaintiffs have failed to plead facts to support a plausible claim that the three Bondholder Defendants—a subset of all bondholders, and half of the Ad-Hoc Group members—individually or collectively, have the authority to direct the course of the criminal investigations or the Singapore Rig Owners conduct in them. *See supra* Section I.B. [13] At best, the Complaint alleges that the Ad-Hoc Group as a whole "controls" the Singapore Rig Owners, and that the Bondholder Defendants are "significant stakeholders" in the Ad-Hoc Group. The Complaint does not allege that the Bondholder Defendants control the Ad-Hoc Group. Accordingly, Plaintiffs' specific performance claim against the Bondholder Defendants should be dismissed because the Bondholder Defendants are unable to provide any relief.

## II.   The Individual Plaintiffs' Claims Should Be Dismissed Because This Court Lacks Subject Matter Jurisdiction Over Them

---

[12]   Plaintiffs separately allege that all current members of the Ad-Hoc Group are bound by the 2016 Releases—including those who did not then own Bonds or sign the 2016 Releases—because they are "successors and assignees" of the original releasing parties. (*Id*. ¶¶ 93, 171.) There is no basis pleaded in the Complaint for this conclusory assertion, contractual or otherwise.

[13]   Decisions made by Mexican prosecutors to pursue the investigations and seek seizure orders and arrest warrants are not subject to any release. (Compl. ¶¶ 126, 134.) Plaintiffs are not alleging, and cannot allege, that those prosecutors are bound by the 2016 Releases or that any actions taken by them breached the 2016 Releases.

Plaintiffs Cañedo, Williamson, Gil, and Villegas assert contract claims—common law claims under New York law—against the Bondholder Defendants in their personal capacities as former officers or directors of Oro Negro. (*See* Counts 1 & 2 (the "<u>Non-Debtor Claims</u>"), Compl. ¶¶ 169–78.) These Non-Debtor Claims have no conceivable effect on the Mexican estates of Integradora and Perforadora, and accordingly, the jurisdictional requirements of 28 U.S.C. § 1334 are unmet.

Section 1334 grants district courts (or bankruptcy courts by referral) "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). An action falls under the bankruptcy court's core jurisdiction if it is "arising under" or "arising in" a bankruptcy case. A proceeding "arising under" title 11 is one based in a provision of the Bankruptcy Code itself, whereas a proceeding "arising in" a case under title 11 is a proceeding that, even if not specifically provided for in the Bankruptcy Code, can take place only in the context of a case under title 11. *In re Casual Male Corp.,* 317 B.R. 472, 475–76 (Bankr. S.D.N.Y. 2004).

A proceeding is "related to" a title 11 case if the action's outcome might have any "conceivable effect" on the bankruptcy estate. *Parmalat Capital Finance, Ltd.* v. *Bank of America Corp.*, 639 F.3d 572, 579 (2d. Cir. 2011) (quoting *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992)). Courts in this Circuit have interpreted "conceivable effect" to mean that "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *In re New 118th LLC*, 396 B.R. 885, 890 (Bankr. S.D.N.Y. 2008) (quoting *Pacor, Inc.* v. *Higgins (In re Pacor, Inc.),* 743 F.2d 984, 994 (3d Cir. 1984)). To withstand a motion to dismiss for lack of subject matter

jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), "the party who invokes the Court's jurisdiction

bears the burden of proof to demonstrate that subject matter jurisdiction exists." *Leon* v.

*Rockland Psychiatric Center*, 232 F. Supp. 3d 420, 426 (S.D.N.Y. 2017).

   The Non-Debtor Claims are not "core" bankruptcy claims because they do not

"arise in" or "under" title 11—they arise under non-bankruptcy contract law, not a provision of

the Bankruptcy Code.  It is well-settled that breach of contract claims based on pre-petition

contracts against defendants who have not filed proofs of claim with the bankruptcy court are

non-core.  *In re Orion Pictures Corp.*, 4 F.3d 1095, 1100 (2d Cir. 1993) (citing *N. Pipeline*

*Const. Co.* v. *Marathon Pipe Line Co.*, 458 U.S. 50, 102 S. Ct. 2858 (1982), superseded by

statute as recognized by Supreme Court in *Wellness Intern. Network, Ltd.* v. *Sharif*, 135 S. Ct.

1932 (2015)).

   Nor do the Non-Debtor Claims have any conceivable effect on the foreign estates.

"A court of *bankruptcy* has no power to entertain collateral disputes between third parties that do

not involve the bankrupt or its property, nor may it exercise jurisdiction over a private

controversy which does not relate to matters pertaining to bankruptcy." *In re Paso Del Norte Oil*

*Co.,* 755 F.2d 421, 424 (5th Cir. 1985) (emphasis added) (citing *In re Shirley Duke Assocs.,* 611

F.2d 15, 18 (2d Cir. 1979); *First State Bank & Trust Co.,* 528 F.2d 350, 353–54 (10th Cir. 1976);

*Associated Elec. Supply Co.* v. *C.B.S. Elec. Sales Corp.*, 288 F.2d 683, 684 (8th Cir. 1961)).

"Even if resolution of the controversy might have a 'chilling effect' on the [disposition of the

bankruptcy], or might reduce claims against the debtor's estate, [a bankruptcy court's exercise

of] jurisdiction over a collateral controversy is improper where it is 'possible' to administer the

estate without resolving the controversy." *Id.* at 425 (citing *In re N.Y. & Worcester Express,*

*Inc.*, 294 F. Supp. 1163, 1165 (S.D.N.Y.1968) and *First State Bank & Trust Co.,* 528 F.2d at 353–54).

Here, the Non-Debtor Claims are personal claims for harms allegedly suffered by the Individual Plaintiffs. The Complaint repeatedly states that the Bondholder Defendants damaged the "livelihood[s]" and "reputation[s]" of the individual plaintiffs, and they are bringing these claims to secure a personal benefit in the form of interference with ongoing criminal prosecutions against them in Mexico. (*See* Compl. ¶¶ 14, 18, 21, 24, 27, 30, 35, 167.) That relief for Oro Negro's former managers—who stand accused of fraudulently administering the debtors' businesses—does not benefit or have any conceivable effect on the foreign estate.

In sum, the Individual Plaintiffs assert private claims against non-debtor third parties in their personal capacities. *See, e.g.*, *In re Parade Place, LLC*, 508 B.R. 863, 872 (Bankr. S.D.N.Y. 2014). This Court does not have subject matter jurisdiction over these claims, and the Individual Plaintiffs' claims should be dismissed. *See* 28 U.S.C. § 1334; *see, e.g., In re Shirley Duke Assocs.,* 611 F.2d 15, 18 (2d Cir. 1979).[14]

## III.   The Individual Plaintiffs Lack Standing to Bring Claims in a Chapter 15 Case

The Individual Plaintiffs' claims should be dismissed for the additional reason that they lack standing to bring their claims in this Chapter 15 case. Under Section 1509 of the Bankruptcy Code, "the *foreign representative* has the capacity to sue and be sued in a court in the United States" when the Court has granted recognition to the foreign proceeding. 11 U.S.C. § 1509(b)(1) (emphasis added). Chapter 15 creates a right of direct access to U.S. courts, and it

---

[14]   While Plaintiffs did not invoke supplemental subject matter jurisdiction pursuant to 28 U.S.C. § 1367 in the Complaint (*see* Compl. ¶ 53), any argument that the Bankruptcy Court has supplemental jurisdiction over the Individual Plaintiffs' claims would likewise fail for the reasons stated in the Motion to Dismiss by the Singapore Rig Owners, which the Bondholder Defendants incorporate by reference. (*See* Singapore Rig Owners' Mem. Law Supp. Mot. Dismiss at 17–24.)

grants that right to foreign representatives alone. This right to obtain relief in U.S. courts does not extend to other individuals with connections to a foreign debtor. *See, e.g.*, *United States* v. *J.A. Jones Const. Grp., LLC*, 333 B.R. 637, 638 (E.D.N.Y. 2005) ("relief under Chapter 15 is available only after a *foreign representative* commences an ancillary proceeding for recognition of a foreign proceeding"); *In re Barclays Bank* v. *Kemsley*, 44 Misc. 3d 773, 778 (N.Y. Sup. Ct. 2014) (observing that "the plain language of Chapter 15 applies only to a 'foreign representative'").

Under the Bankruptcy Code, only the Foreign Representative has standing to sue or be sued in a Chapter 15 case. The remaining Individual Plaintiffs' claims asserted in the Complaint should therefore be dismissed.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety with prejudice.

Dated: October 31, 2019
New York, New York

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

/s/ *William A. Clareman*
Andrew N. Rosenberg
Aidan Synnott
William A. Clareman
Claudia R. Tobler
Christopher Hopkins
Crystal Johnson Geise

1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

*Counsel for the Bondholder Defendants*