# Exhibit 2

CI-FDF/T/UI-1S/D/00787/09-2018.



ASUNTO: SE SOLICITA LA APLICACIÓN DE UN CRITERIO DE OPORTUNIDAD EN MI BENEFICIO.

**SEÑOR AGENTE DEL MINISTERIO PÚBLICO, TITULAR DE LA UNIDAD DE INVESTIGACIÓN 6 SIN DETENIDO, DE LA AGENCIA INVESTIGADORA "C" DE LA FISCALÍA CENTRAL DE INVESTIGACIÓN PARA LA ATENCIÓN DE DELITOS FINANCIEROS, DE LA PROCURADURÍA GENERAL DE JUSTICIA DE LA CIUDAD DE MÉXICO.**

**ALONSO DEL VAL ECHEVERRÍA**, por mi propio derecho, en mi carácter de imputado en la presente carpeta de investigación, señalo como domicilio para oír y recibir todo tipo de notificaciones y documentos el ubicado en Félix Berenguer de Marquina 125–3, Lomas de Chapultepec, Alcaldía Miguel Hidalgo, C.P. 11000, en la Ciudad de México; con fundamento en lo dispuesto por el artículo 20, apartado B, fracción VIII de la Constitución Política de los Estados Unidos Mexicanos; 113, 115 y demás relativos y aplicables del Código Nacional de Procedimientos Penales, designo como mi abogado defensor para que ejerza mis derechos al licenciado en derecho **FERNANDO REYGADAS ANFOSSI**; ante Usted, con el debido respeto, comparezco y le expongo:

Tuve conocimiento recientemente a través de medios de comunicación circulación nacional, que el suscrito me encuentro relacionado en calidad de imputado los hechos que se investigan en la presente carpeta de investigación, los cuales se hace

1

Scanned with CamScanner

morales denunciantes ORO NEGRO DUCUS PTE. LTD., ORO NEGRO IMPETUS PTE. LTD., ORO NEGRO FORTIUS PTE. LTD., ORO NEGRO LAURUS PTE. LTD. y ORO NEGRO PRIMUS PTE. LTD.

También tengo conocimiento que, derivado de esos hechos, Usted solicitó el 10 de julio del presente año al Juez de Control del Tribunal Superior de Justicia de la Ciudad de México, librara orden de aprehensión en mi contra por el delito de abuso de confianza y/o administración fraudulenta, cometido en agravio de las referidas personas morales. Hoy se que el mandato de captura efectivamente fue librado en esa fecha por el Juez de Control Centésimo Segundo del Sistema Penal Acusatorio con sede en la Ciudad de México.

En virtud de lo anterior, sin que medie ningun tipo de violencia o presión sobre mi persona y con pleno conocimiento de los alcances y consecuencias legales de la presente solicitud, con fundamento en lo dispuesto por los artículos 20, apartado "B" y 21 de la Constitución Política de los Estados Unidos Mexicanos, 221, 256, 257 y demás relativos y aplicables del Código Nacional de Procedimientos Penales, ocurro ante esa Representación Social a solicitar la aplicación de un criterio de oportunidad en el presente asunto en mi beneficio, toda vez que cuento con datos útiles, eficientes, necesarios y pertinentes para la debida investigación de los hechos materia de la presente indagatoria.

Entonces, con la finalidad de que cuente con los elementos necesarios para aprobar la aplicación del criterio de oportunidad solicitado, le manifiesto los siguientes hechos que resultan relevantes, idóneos y pertinentes para su investigación:

Conocí a Gonzalo Gil White como representante de Grupo Axis durante el tiempo que residí en Miami, Florida alrededor de los años 2006-2007, ya que él residió en dicha ciudad varios años y lleva radicando en la misma varios meses. Posteriormente, en el año 2012 me entrevisté con él para incorporarme a trabajar en el grupo Axis. En marzo del año 2013 me incorporé como director jurídico de Integradora de Servicios Petroleros

2

Scanned with CamScanner

1) Integradora de Servicios Petroleros Oro Negro S.A.P.I de C.V.
2) Perforadora Oro Negro S. de R.L. de C.V. (antes Todco Mexico Inc.)
3) Servicios Todco S. de R.L. de C.V.
4) Operadora Oro Negro, S. de R.L. de C.V.
5) Oro Negro Servicios Administrativos S. de R.L. de C.V.
6) Oro Negro Drilling Pte. Ltd.
7) Oro Negro Fortius Pte. Ltd.
8) Oro Negro Laurus Pte. Ltd.
9) Oro Negro Decus Pte. Ltd.
10) Oro Negro Impetus Pte. Ltd.
11) Oro Negro Primus Pte. Ltd.
12) Oro Negro Vastus Pte. Ltd.
13) Oro Negro Offshore Drilling Pte. Ltd.
14) ON Costa Afuera S. de R.L. de C.V.
15) ON Personnel Services S. de R.L. de C.V.

Oro Negro contaba en su estructura corporativa con una asamblea de accionistas, un consejo de administración y un director general. El director general de la empresa era Gonzalo Gil White, y el presidente del consejo de administración José Antonio Cañedo White, ambos funcionarios de Axis. El director general era quien se encargaba de establecer la estrategia y tomar las decisiones del grupo.

A partir de febrero de 2012, se inició con la operación de Oro Negro. El 31 de julio de 2012, se realizó la compra de acciones para la adquisición de Todco México Inc. y Servicios Todco S. de R.L. de C.V. ("Todco"). Con la compra de Todco se adquirieron sus activos, entre los que se encontraba una plataforma modular conocida como Rig 3 ("Rig 3") bajo contrato y en operación con Pemex desde 2003.

En 2012, Integradora realizó la adquisición a Jasper Investments de dos plataformas autoelevables Primus y Laurus ("Primus" y "Laurus"). Con fecha 29 de octubre de 2012, Oro Negro emitió un bono por hasta US$340 millones. La emisión se realizó con la finalidad de financiar la compraventa de las plataformas Primus y Laurus

Scanned with CamScanner

Asimismo, en marzo de 2013, dos afores realizaron de manera indirecta a través de un fideicomiso administrado por Axis una inversión en Integradora. La inversión fue por la cantidad inicial de US$200,000,000.00. Con esta inversión, Axis representaba, controlaba y administraba, de manera directa e indirecta, aproximadamente 49% del capital social de Integradora, convirtiéndose así en el accionista con mayor participación accionaria en Oro Negro.

Al cierre de julio de 2013, Oro Negro había adquirido 8 plataformas autoelevables ("Jackups"), mismas que adquirió en grupos de dos en dos en distintas fechas conforme al siguiente calendario y por las cuales se comprometió a realizar los pagos correspondientes:

| Jackups | Fecha Adquisición | Astillero |
|---|---|---|
| Primus y Laurus | Julio 2012 | Keppel Fels |
| Fortius y Decus | Noviembre 2012 | PPL |
| Impetus y Vastus | Marzo 2013 | PPL |
| Supremus y Animus | Julio 2013 | PPL |

En octubre 2013, Oro Negro emitió un bono de corto plazo por US$ 175 millones en el mercado Noruego, con el fin de financiar la adquisición del Jackup Fortius ("Bono Fortius").

El 29 de enero de 2014, Oro Negro emitió un bono por US$725 millones en el mercado Noruego para el refinanciamiento de los bonos emitidos en octubre de 2012 y octubre de 2013, así como para el financiamiento del pago final al astillero por la construcción y entrega del Jackup Decus (el "Bono Noruego").

A junio de 2014, Oro Negro tenía 4 Jackups (Primus, Laurus, Fortius y Decus) en operación y con contrato con Petróleos Mexicanos (Pemex), además de la plataforma modular Rig 3 que estaba bajo contrato con Pemex.

Scanned with CamScanner

En diciembre de 2014, Oro Negro emitió un bono en el mercado Noruego por US$175 millones a fin de financiar la compra al astillero PPL de la plataforma Impetus. A dicha fecha el monto total de financiamiento de Oro Negro ascendía a la cantidad de US$900 millones y contaba con un capital social cercano a los US$590 millones.

Oro Negro mantenía a través de su empresa Perforadora Oro Negro S. de R.L. de C.V., en adelante Perforadora, una relación comercial, contractual y de negocios con Pemex. De 2012 a 2015 mantuvo contratado el Rig 3, contrato que concluyó en el año 2015. Por su parte, las plataformas Primus y Laurus fueron contratadas por Pemex en abril del año 2013. Las plataformas Fortius y Decus fueron contratadas por Pemex en enero de 2014. La quinta plataforma Impetus fue contratada por Pemex en diciembre de 2015.

Posterior a previas negociaciones y acuerdos tomados entre Oro Negro y Pemex en los años 2015 y 2016, en marzo de 2017, Oro Negro fue contactado por Pemex a fin de negociar distintos ajustes a las tarifas de renta diaria de las plataformas que se establecían en los contratos, lo anterior derivado de la baja del precio del barril de petróleo y la situación financiera por la que atravesaba PEMEX. Después de varios meses de negociación, dicho proceso culminó en agosto de 2017 con un acuerdo mediante el cual Oro Negro aceptaba la reducción y ajuste en las tarifas de renta diaria de las plataformas por el resto del plazo de los contratos a $116,300 dólares diarios por plataforma y sujetarlo a una fórmula, al igual que, según tengo conocimiento, a otros proveedores o contratistas de Pemex también se les ajustaron sus tarifas, por lo que una vez que Oro Negro aceptó dicho ajuste a las tarifas y concluyó el proceso de negociación con Pemex, se pretendía lograr un acuerdo con los acreedores de Oro Negro respecto del Bono Noruego, sin embargo, Gonzalo Gil, por recomendación y sugerencia de los asesores externos, decidió recomendar al Consejo de Administración de Integradora se resolviera solicitar el concurso mercantil de Perforadora, incluyendo solicitar medidas precautorias para obligar a PEMEX siguiera pagando con la tarifa vigente de los contratos, es decir, aproximadamente $160,000 dólares diarios por plataforma para 4 de las plataformas y $130,000 para la Impetus. En la última negociación con PEMEX en que se llegó al acuerdo satisfactorio referido participamos principalmente, por parte

Scanned with CamScanner

de la voz. Cabe mencionar que durante las negociaciones de los contratos con PEMEX para la reducción de las tarifas, hasta donde es de mi conocimiento, no le fue solicitado a ORO NEGRO ni a ninguno de sus administradores o empleados soborno alguno por parte de algún funcionario de PEMEX como condición para mantener las tarifas o no cancelar los contratos.

El concurso mercantil de Perforadora Oro Negro fue solicitado el 11 de septiembre de 2017 y admitido a trámite el día 5 de octubre de 2017 por el Juez Segundo de Distrito en Materia Civil en la Ciudad de México bajo el expediente 345/2017, solicitud que fue presentada sin el conocimiento de PEMEX ni de los acreedores de ORO NEGRO, pues ocurrió después de haber concluido la negociación con Pemex y en medio de negociaciones con los acreedores del Bono Noruego. El objetivo primordial de la estrategia era lograr la reestructuración de los pasivos de la compañía, logrando por un lado, una medida cautelar para mantener los contratos vigentes entre Oro Negro y Pemex y así obtener el pago de aproximadamente $160,000 dólares diarios para 4 de las plataformas y $130,000 dólares para la quinta plataforma y, por el otro, obtener una medida para que Oro Negro dejara de pagar las rentas a sus acreedores.

Una vez que Perforadora solicitó el concurso mercantil, se actualizó un Evento de Incumplimiento previsto por la cláusula decimoquinta, inciso f), del contrato de Préstamo de bonos de fecha 29 de abril de 2016, dicho contrato preveía diversas causales de incumplimiento tales como la falta de pago en tiempo y forma a los acreedores, la falta de cumplimiento de cualquiera de las obligaciones establecidas en el Contrato de Bonos, la solicitud de concurso mercantil, entre otras, mismas que preveían ciertas consecuencias, que tanto Gonzalo Gil como los demás directivos conocíamos y que podían materializarse, tales como la remoción de los cargos de directores en las empresas ORO NEGRO DECUS PTE. LTD., ORO NEGRO IMPETUS PTE. LTD., ORO NEGRO FORTIUS PTE. LTD., ORO NEGRO LAURUS PTE. LTD. y ORO NEGRO PRIMUS PTE. LTD y ORO NEGRO DRILLING PTE. LTD., por lo que a partir del 11 de septiembre 2017, fecha en la que PERFORADORA solicitó el concurso mercantil, sabíamos

Scanned with CamScanner

podía suceder dicha cuestión con lo cual ya no contaríamos con la autorización legal y contractual para seguir administrando los bienes de dichas empresas del grupo.

Posteriormente, tuvimos conocimiento de que se habían iniciado diversas carpetas de investigación en nuestra contra y de la empresa, dentro de las cuales, en una de ellas un Juez Penal de la Ciudad de México decretó el aseguramiento de las cuentas bancarias tanto del fideicomiso como de Perforadora, argumentando, entre otras cosas, que se habían celebrado operaciones por parte de Perforadora con "empresas fantasmas", información que se obtuvo a través de Declaraciones Informativas de Operaciones con Terceros, mismas que se estableció como estrategia de defensa que eran pruebas falsas o fabricadas, sin embargo, nos fue informado que se trata de información que fue efectivamente remitida por el SAT.

De la misma carpeta de investigación de la que se aseguraron las cuentas bancarias de Perforadora, también supimos que se autorizó por parte de un Juez Penal de la Ciudad de México una orden de restitución respecto de las 5 plataformas que permitía a los acreedores tomar posesión de las mismas con auxilio de autoridades federales para su ejecución, no obstante ello, Gonzalo Gil White, al enterarse de dicha orden de restitución, ordenó resistir y combatir la ejecución de la misma, para lo cual se enviaron abogados a cada una de las plataformas, además se tapó el acceso al helipuerto de cada una de ellas y se ordenó la activación de los cañones de agua en todas las plataformas para que no descendiera helicóptero alguno. A pesar de ello, en la plataforma DECUS se supo que llegó el representante legal de las empresas dueñas de las plataformas junto con un elemento de la Agencia de Investigación Criminal y un elemento de seguridad privada.

Por otro lado, tengo conocimiento de que parte de los hechos que se investigan en la presente carpeta, tienen que ver con la administración y la disposición de los recursos que se recibieron por parte de Perforadora en el fideicomiso F/1695. Es importante señalar que en el periodo de 2014 a 2015, se recibieron recursos en las cuentas de Perforadora, así como también, por concepto de rentas, se recibieron en las cuentas las hoy ofendidas ORO NEGRO FORTIUS, PTE. LTD., ORO NEGRO LAURUS, P

Scanned with CamScanner

LTD., ORO NEGRO PRIMUS, PTE. LTD., y ORO NEGRO DECUS, PTE. LTD, así, en relación a ello puedo manifestar, en primer lugar, que quien tomaba las decisiones de qué hacer con los recursos recibidos tanto en Perforadora como en las empresas ofendidas, era Gonzalo Gil, asimismo, es importante señalar que el destino y prelación de pagos que se debía seguir en relación a los pagos del fideicomiso estaba regulado por la cláusula NOVENA del contrato de fideicomiso. Así también es válido sostener que los recursos recibidos por las empresas ofendidas por concepto de rentas no estaba previsto se enviaran a Perforadora, pues no había ningún concepto, según mi entendimiento, que permitiera o autorizara realizar movimientos de recursos de las empresas ofendidas a Perforadora, así como tampoco existe, en mi entendimiento, justificación legal o contractual alguna para sostener que los recursos recibidos por PERFORADORA provenientes del fideicomiso referido podían ser enviados a INTEGRADORA.

En virtud de lo anterior, solicito a esa Representación Social que previo a los trámites de ley, solicite la cancelación de la orden de aprehensión que fue librada en mi contra, apruebe el criterio de oportunidad solicitado y en su momento, se decrete en mi favor la extinción de la acción penal por los hechos materia de la presente investigación.

Finalmente, no omito mencionar que me encuentro a su disposición para la ratificación del presente escrito –mismo que se encuentra firmado de igual forma por mi defensor particular pues protesta desde este momento el cargo que le he conferido–, así como para aportar mayores elementos en caso de así requerirlo esa Representación Social.

**POR LO EXPUESTO Y DEBIDAMENTE FUNDADO, ANTE USTED, AGENTE DEL MINISTERIO PÚBLICO, LE SOLICITO:**

**PRIMERO.** Tenerme por presentado en los términos del presente escrito, solicitando la aplicación en mi beneficio de un criterio de oportunidad.

Scanned with CamScanner

**SEGUNDO.** Previo a los trámites de ley, solicite la cancelación de la orden de aprehensión que fue librada en mi contra, apruebe el criterio de oportunidad solicitado y en su momento, se decrete en mi favor la extinción de la acción penal por los hechos materia de la presente investigación.

ATENTAMENTE

ALONSO DEL VAL ECHEVERRÍA.

**FERNANDO REYGADAS ANFOSSI.**
DEFENSOR PARTICULAR DEL SEÑOR ALONSO DEL VAL ECHEVERRÍA PROTESTANDO DESDE ESTE MOMENTO EL CARGO QUE ME HA SIDO CONFERIDO.

Scanned with CamScanner